2003 UT App 339

James and Marjorie COROLES, Brian Rueckert, Lennie and Beverly Bane, David and Sharon Boll, Johannes Janssen, John Karg, Jeffrey L. Miller, Dinesh C. Patel, Bradley R. Peterson, Mark Peterson, Dorsena Picknell, Ramesh K. Prakash, Gordon L. Smith, Tori Smith, Max M. Steele, Stan J. Beus, Steven R. Beus, Michael C. Gleave, Dan Jolley, Tad Gygi, Scott H. Frogley, Jerry M. Frisch, Paul Nagel, M. Sean Brown, Hillary Drammis, Joseph Buzas, Kent Danjanovich, Shane and Bobi Owen, Barton T. Gleave, Brian Neilson, Mark Reichman, Jeffery Smith, Brad Collings, Tim Jolsen, Jayanti Govindji, Tony Owen, Jeff Oviatt, Richard Jones, and Craig Jacobs, Plaintiffs and Appellants,

v.

Scott R. SABEY, an individual; Day, Shell & Liljenquist, a limited liability Corporation; Fabian & Clendenin, a professional Corporation; Mark Cotter, an individual; Frank Suitter, an individual; Suitter Axland, a professional law cor-

poration; Ernest Ganter, an individual; Albrecht Ganter, an individual; Constance Ganter, an individual; and Brauerei Ganter GmbH & Co. KG, a German Corporation, Defendants and Appellees.

No. 20020407–CA.

Court of Appeals of Utah.

Oct. 17, 2003.

Britton M. Worthen, Leo R. Beus, and K. Scott Hadford, Beus Gilbert PLLC, Scottsdale, Arizona; John C. Rooker, Hanks Rooker & Denning PC, Salt Lake City; and Michael Goldsmith, BYU Law School, Provo, for Appellants.

Alan L. Sullivan, Matthew L. Lalli, Amy F. Sorenson, Snell & Wilmer, Richard D. Burbidge, Jason D. Boren, Stephen B. Mitchell, Burbidge & Mitchell, J. Michael Hansen, Nelson Chipman Quigley & Hansen, David B. Watkiss, and Craig H. Howe, Ballard

Spahr Andrews & Ingersoll, Salt Lake City, for Appellees.

Before JACKSON, P.J., and BENCH and ORME, JJ.

## OPINION

ORME, Judge:

¶ 1 Plaintiffs appeal the dismissal of their complaint related to their substantial losses from an unprofitable investment. We affirm.

## BACKGROUND

¶ 2 According to the complaint,[1] "Plaintiffs are a group of individual investors" in a company called Ganter USA. This company was created and incorporated in January 1997 as a vehicle for bringing the products of Brauerei Ganter GmbH & Co. KG (Ganter Germany), "a major German beer company," to the United States. The venture failed, however, and as a result, Plaintiffs each lost the thousands of dollars they had invested,[2] amounting to more than $4.6 million collectively.

¶ 3 Defendants, all of whom played some role in the Ganter USA venture and allegedly misrepresented information about Ganter USA to Plaintiffs, can be divided into two groups. The first group, the Ganter defendants, consists of Ganter Germany, a corporation, and Ernst, Constance, and Albrecht Ganter, individuals who were principals of Ganter Germany and directors of Ganter USA. It was these individuals who desired to bring Ganter Germany's products to the United States in the first place. To this end, they recruited Angelo Degenhardt, a Salt Lake City area restaurant owner who also

---

1. "When determining whether a trial court properly granted a motion to dismiss, we accept the factual allegations in the complaint as true and consider them, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. We recite the facts accordingly." *Krouse v. Bower*, 2001 UT 28, ¶ 2, 20 P.3d 895 (citation omitted). *Accord Heathman v. Hatch*, 13 Utah 2d 266, 372 P.2d 990, 991 (1962) ("The defendant's motion to dismiss having been granted, we are obliged to assume that the averments of plaintiff's complaint are true.").

Also, because we affirm the dismissal of Plaintiffs' complaint on the ground that it does not sufficiently plead the claims it contains, we do not here go into extensive detail about the allegations. *See id.* at 992 (choosing not to "burden[ ] th[e] opinion with the details of plaintiff's much too long and involved complaint" in an appeal affirming the dismissal of the complaint). We will provide some further details regarding Plaintiffs' allegations in the analysis section of our opinion, as those details become pertinent to our discussion.

2. The amount that each Plaintiff invested ranged between $5,000 and $590,000.

hoped to open a brewpub, "to direct their American venture." According to the complaint, Mr. Degenhardt made several misrepresentations to Plaintiffs regarding Ganter USA during the process of raising funds for the company, and Plaintiffs relied on these misrepresentations in making their investment decisions.[3]

¶ 4 The other group of defendants, "the professional defendants," consists of attorneys Scott Sabey, Mark Cotter, Frank Suitter, and the law firms for which all three attorneys worked.[4] Mr. Sabey was the first attorney to assume a role in this venture. He met with Ernst and Constance Ganter and Mr. Degenhardt in December 1996, before Ganter USA was formed, at which time he learned of the Ganters' desire to bring Ganter products to the United States and advised the three to create Ganter USA as a vehicle for doing so. When the Ganters and Mr. Degenhardt decided to follow this advice, Mr. Sabey drafted the incorporation documents and an offering memorandum [5] to solicit financial support. This offering memorandum, upon which some of the plaintiffs relied in making their investment decision, is now alleged to contain various omissions and misrepresentations.[6]

¶ 5 Ernst Ganter hired Mr. Cotter and Mr. Suitter at a later date, in January 1998,[7] to represent Ganter Germany and also to assist with some of Ganter USA's projects.[8] In the course of their work for the Ganter companies, it is alleged, both Mr. Cotter and Mr. Suitter became aware of the misleading information upon which Plaintiffs were relying, including the offering memorandum, yet they remained silent with regard to this knowledge.

¶ 6 Due to their lost investment and the many wrongs they contend that Defendants committed in the process, Plaintiffs sued Defendants, alleging thirteen different causes of action. Plaintiffs' complaint consists of 725 paragraphs spanning 136 pages, the first 646 paragraphs and 125 pages of which are alleged facts.

¶ 7 Plaintiffs' thirteen causes of action fall into four general categories. The first category, "primary fraud" claims, includes the claims of common law fraud, negligent misrepresentation/omission, and securities fraud. The second category, which we will term "secondary fraud" claims, includes civil conspiracy and aiding and abetting fraud. The "unfairness and interference" claims consist of unjust enrichment/constructive trust, con-

---

3.  Oddly, neither Ganter USA nor Mr. Degenhardt is a defendant in this action.

4.  Mr. Sabey worked for the law firm of Day, Shell & Liljenquist "until approximately July 1998," at which time he joined Fabian & Clendenin. Both Mr. Cotter and Mr. Suitter worked for the law firm of Suitter Axland. Mr. Cotter left Suitter Axland in February 1999.

5.  This memorandum, which was dated April 1, 1997, was simply a five-page description of Ganter USA's securities and the risks involved in purchasing them (such as "no operating history" and "inexperience of management"), and it was accompanied by a cover letter and a stock purchase agreement form.

    The complaint also mentions that Mr. Sabey drafted a second offering memorandum. This second memorandum was "identical [to the first] in information but bore [a] different date[ ]."

6.  The introductory paragraphs of the complaint make the broad allegation that the memorandum was "misleading and rife with material omissions and misrepresentations." Then, section III of the complaint states that "[t]he material omissions and misrepresentations of information included in these offering memoranda ... are de-

scribed in greater detail in sections IV and V of this Complaint." However, sections IV and V do not attribute even one misrepresentation to the offering memorandum.

    The complaint does allege one specific misrepresentation found in the memorandum, however, in section III itself. It mentions that due to the memorandum's omissions (e.g., "Plaintiffs were never·told that Sabey had a five percent interest in Ganter USA."), the memorandum's statement that "[r]easonable effort has been made ... to present all information which the Company considers to be material" was false.

7.  As of this date, several of the plaintiffs had already invested their money in Ganter USA. For example, Mark Reichman first invested in Ganter USA "[o]n or about November 26, 1997." Plaintiffs Jayanti Govindji, Scott Frogley, Tori Smith, Dinesh Patel, and possibly others (the complaint does not specify the date on which some of the plaintiffs invested their money) also invested in Ganter USA prior to January 1998.

8.  In March 1999, Mr. Degenhardt hired attorney Frank Suitter to represent Ganter USA on a more formal basis. This representation lasted until December 1999.

version, interference with contract, and interference with business relations. The final category of claims are those claims that were actually wrongs against Ganter USA, which Ganter USA assigned to Plaintiffs. These "assigned" claims include breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of contract, and breach of the covenant of good faith and fair dealing.

¶ 8 After Plaintiffs filed their complaint, some of Defendants moved to dismiss it as inadequate under rules 9(b) and 12(b)(6) of the Utah Rules of Civil Procedure. In their response to this motion, Plaintiffs defended their complaint and urged the trial court to deny Defendants' motion to dismiss. Also, at the end of their response, Plaintiffs included a one-paragraph request that they be granted leave to amend the complaint in the event the court found it to be inadequate.[9]

¶ 9 The trial court held a hearing on the motion to dismiss, and at the end of the hearing, it dismissed the claims of aiding and abetting breach of fiduciary duty, aiding and abetting fraud, and unjust enrichment.[10] It also entirely dismissed from the lawsuit the defendant Constance Ganter.

¶ 10 Then, in a subsequently released memorandum decision, the court addressed the remaining claims and dismissed all of them. It stated that the dismissal of the entire complaint was "without prejudice," but it denied Plaintiffs the opportunity to amend the complaint.

¶ 11 According to the memorandum decision, the trial court's reason for dismissing the primary fraud claims was that "the plaintiffs ha[d] failed to plead their claims of fraud with particularity." It dismissed the as-

signed claims of breach of fiduciary duty and breach of contract because, it said, "even if the defendants made the alleged misrepresentations and omissions to the plaintiffs, Ganter USA would have been the benefactor and not the victim of these actions. In other words, the Complaint contains no allegations of damage to Ganter USA as a result of these actions."

¶ 12 The court's reason for dismissing the remaining claims was that they were "predicated on the fraud and breach claims, [so] the dismissal of the [fraud and breach] causes of action[ ] result[ed] in a dismissal of the plaintiffs' entire Complaint."

¶ 13 As for Plaintiffs' hope to amend their complaint, the court recognized

> that alternatively it could have given the plaintiffs leave to amend their Complaint. However, the plaintiffs have already filed an unusually long voluminous Complaint. Plaintiffs still contend they've pled fraud with particularity. The Complaint, despite its extraordinarily lengthy content, does not allege fraud with particularity and counsel's failure to see this[ ] causes this Court concern about the value of allowing an Amended Complaint, at this time. There is nothing to indicate to the Court that an amendment would resolve these problems. Therefore, . . . leave to amend is denied.

¶ 14 Plaintiffs now appeal the dismissal of their complaint. They also appeal the denial of their request for leave to amend the complaint.

## ISSUES AND STANDARDS OF REVIEW

¶ 15 This appeal presents two issues. The first issue is whether the trial court

---

9. This request was as follows:
   > If this Court concludes that Plaintiffs' Complaint does not contain sufficient allegations of fraud to enable Sabey and Fabian to adequately answer, Utah courts have held that the appropriate remedy is to grant Plaintiffs leave to amend the Complaint. *Chadwick v. Nielsen,* 763 P.2d 817, 820 (Utah App.1988); *Girard v. Appleby,* 660 P.2d 245, 248 (Utah 1983). *See also Luce [v. Edelstein,* 802 F.2d 49, 56 (2d Cir.1986)] (holding "[c]omplaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend" and that trial court abused discretion for failing to grant leave to amend). This is particularly true where, as

here, the Complaint was drawn prior to discovery. *Craftmatic Securities Litigation [v. Kraftsow,* 890 F.2d 628, 645 (3d Cir.1989)].

10. In the court's formal order of dismissal, which was issued approximately one month after the hearing, the court clarified its reasoning for dismissing these three claims: "At the hearing, the Court dismissed [the claims of] aiding and abetting breach of fiduciary duty and aiding and abetting fraud ... because these claims are not cognizable under Utah law. The Court further dismissed [the unjust enrichment claim] based on plaintiffs' failure to state a claim...."

erred in dismissing Plaintiffs' complaint. "Because the propriety of a motion to dismiss is a question of law, we review for correctness, giving no deference to the decision of the trial court." *Krouse v. Bower,* 2001 UT 28,¶ 2, 20 P.3d 895.

¶ 16 The second issue concerns the propriety of the trial court's refusal to grant Plaintiffs leave to amend their complaint. "We will not disturb a trial court's ruling on a motion to amend a complaint absent a clear abuse of discretion. Under that standard, ' "we will not reverse unless the decision exceeds the limits of reasonability." ' " *Neztsosie v. Meyer,* 883 P.2d 920, 922 (Utah 1994) (quoting *Crossland Sav. v. Hatch,* 877 P.2d 1241, 1243 (Utah 1994)) (other citations omitted).

## ANALYSIS

### I. DISMISSAL OF THE COMPLAINT

#### A. Claims Not Before Us

¶ 17 Before proceeding, we pause to point out that Plaintiffs have not briefed, and have therefore waived the opportunity to appeal, the dismissal of five of their thirteen causes of action: the unfairness and interference claims and the negligent misrepresentation/omission claim.

¶ 18 While section I of Plaintiffs' brief is entitled "THE TRIAL COURT ERRED IN DISMISSING THE ENTIRE COMPLAINT," this reference to "the entire complaint," by itself, certainly does not constitute the analysis required to sustain the five claims that we are now holding to be waived, *see* Utah R.App. P. 24(a)(9) ("The argument shall contain the contentions and reasons of the appellant with respect to the issues presented[.]"), nor is such an analysis to be found anywhere in section I. Section I "does not even discuss, let alone analyze," any of the five claims. *Pixton v. State Farm Mut. Auto. Ins. Co.,* 809 P.2d 746, 751 (Utah Ct. App.1991).

¶ 19 Nor does the fact that negligent misrepresentation/omission is very similar to common law fraud, *compare Atkinson v. IHC Hosps., Inc.,* 798 P.2d 733, 737 (Utah 1990) (listing the elements of negligent misrepre-

sentation), *cert. denied,* 498 U.S. 1090, 111 S.Ct. 970, 112 L.Ed.2d 1056 (1991), *with Gold Standard, Inc. v. Getty Oil Co.,* 915 P.2d 1060, 1066–67 (Utah 1996) (listing the elements of common law fraud), which Plaintiffs did discuss in their brief, justify sustaining Plaintiffs' negligent misrepresentation/omission claim. Although this fact might have justified Plaintiffs in incorporating by reference all applicable arguments from their fraud discussion into their negligent misrepresentation/omission discussion, it does not excuse their failure to even mention the claim of negligent misrepresentation/omission in their brief. At a minimum, they should have discussed those elements of this claim that differ from those of fraud and explained why it was error for the trial court to dismiss their negligent misrepresentation/omission claim as inadequately pleaded.

¶ 20 It appears that Plaintiffs' failure to brief these claims was intentional, not inadvertent, because one of Defendants' briefs pointed out this failure, and Plaintiffs did not beg to differ in their reply brief. Regardless of the reason, though, Plaintiffs do not address these claims, and we therefore do not consider them. *See Holmes Dev., LLC v. Cook,* 2002 UT 38,¶ 54, 48 P.3d 895 ("By failing to address these issues on appeal, [appellant] has waived any appeal with respect to [its] negligence and negligent misrepresentation causes of action."); *Pasquin v. Pasquin,* 1999 UT App 245,¶ 21, 988 P.2d 1 ("[Appellees] assert that [appellant] has waived any challenge to this ruling by failing to raise, brief, or argue the issue. We agree."), *cert. denied,* 994 P.2d 1271 (Utah 2000). We now turn our attention to the remaining eight causes of action.

#### B. Primary Fraud Claims

¶ 21 Whether the trial court erred in dismissing the primary fraud claims depends on whether Plaintiffs have met their burden to plead "the circumstances constituting fraud or mistake . . . with particularity." Utah R. Civ. P. 9(b).

¶ 22 Regarding this procedural rule, the Utah Supreme Court has held that "the mere recitation by a plaintiff of the elements of fraud in a complaint does not satisfy the particularity requirement." *Armed Forces Ins. Exch. v. Harrison,* 2003 UT 14,¶ 16, 70

P.3d 35. Rather, rule 9(b) requires a complaint to recite "[t]he relevant surrounding facts ' "... with sufficient particularity to show what facts are claimed to constitute [the fraud] charges." ' " *Id.* (quoting *Williams v. State Farm Ins. Co.*, 656 P.2d 966, 971 (Utah 1982) (quoting *Heathman v. Hatch*, 13 Utah 2d 266, 372 P.2d 990, 991 (1962))).

¶ 23 However, rule 9(b) also imposes a much more basic and fundamental requirement: a requirement of clarity and conciseness. In *Heathman*, the Utah Supreme Court affirmed the dismissal of the plaintiff's complaint because the complaint, which was "33 legal size typewritten pages" in length, did not comply with rule 9(b). 372 P.2d at 991–92. The Court stated the following regarding the complaint's noncompliance with that rule:

> Without burdening this opinion with the details of plaintiff's much too long and involved complaint, it is sufficient to say that its shortcomings are such that it was well within the discretion of the trial court to conclude that it failed to comply with [rules 8(a) and 9(b) ], and, accordingly, to grant the motion to dismiss. The objective of these rules is to require that the essential facts upon which redress is sought be set forth with simplicity, brevity, clarity and certainty so that it can be determined whether there exists a legal basis for the relief claimed; and, if so, so that there will be a clearly defined foundation upon which further proceedings by way of responsive pleadings and/or trial can go forward in an orderly manner.

*Id.* at 992.[11]

■ ¶ 24 As discussed below, Plaintiffs' complaint does not satisfy the above standards as to the primary fraud claims.

### 1. Common Law Fraud

¶ 25 The section of the complaint that is devoted to common law fraud consists of eleven paragraphs. The first of these paragraphs, paragraph 661 of the complaint, simply reads: "The foregoing paragraphs numbered 1–660 are incorporated into this Count." The remaining ten paragraphs of this section merely recite the elements of fraud and allege that Defendants committed each element.

¶ 26 This method for pleading fraud is unacceptable under rule 9(b), especially in a complaint of such enormous length. As it is well established that "the mere recitation ... of the elements of fraud in a complaint does not satisfy the particularity requirement," *Armed Forces*, 2003 UT 14 at ¶ 16, 70 P.3d 35, we place no value on the last ten paragraphs of this section of the complaint.

¶ 27 The section's first paragraph, paragraph 661, is equally unhelpful. It essentially dumps upon the trial court, and now upon this court, the burden of sifting through the hundreds of paragraphs of alleged facts to ascertain whether Plaintiffs have "allege[d] ... facts necessary to make all their elements of fraud." *DeBry v. Noble*, 889 P.2d 428, 443 (Utah 1995). Such an approach is unacceptable. It is Plaintiffs' responsibility, not the courts', to set forth "[t]he *relevant surrounding facts*" in such a manner that it is evident " ' "what facts are claimed to constitute [the fraud] charges." ' " *Armed Forces*, 2003 UT 14 at ¶ 16, 70 P.3d 35 (citations omitted) (emphasis added).[12] *See Arena Land & Inv. Co. v. Petty*, No. 94–4196, 1995 WL 645678, at *1, 1995 U.S.App. LEXIS 31140, at *3 (10th Cir. Nov. 3, 1995) ("The

---

11. In citing *Heathman v. Hatch*, 13 Utah 2d 266, 372 P.2d 990 (1962), we do not mean to imply that all complaints consisting of thirty-three or more pages are necessarily "much too long and involved," 372 P.2d at 992, nor do we believe that the Utah Supreme Court intended to create such a per se rule in *Heathman*. Whether a complaint is "much too long and involved" is, of course, dependent upon the complexity of each individual case. At the same time, counsel would be well-advised to avoid making the mistake made in this case: equating "particularity" with unnecessary detail, if not minutia.

12. We note that the problem justifying the dismissal in *Armed Forces Insurance Exchange v. Harrison*, 2003 UT 14, 70 P.3d 35, was that the plaintiff had "failed to allege facts in its complaint supporting its claim that [defendant] personally committed fraud." *Id.* at ¶ 21. Even though the present case involves the opposite problem—that the complaint is actually *too* replete with alleged facts, to such a degree that it is functionally incomprehensible—this problem is of equal magnitude. In the instant case, we are, as the Utah Supreme Court was in *Armed Forces*, unable to ascertain " ' "what facts are claimed to

third amended complaint is wordy, repetitive and fails to allege the necessary elements of the claims it is asserting. Indicative of the complaint's inadequacy is the fact that it rambles on for sixty-four pages before reaching the first claim for relief. It is neither the court's nor the appellees' role to sift through a lengthy, conclusory and poorly written complaint to piece together the cause of action."). Plaintiffs' "much too long and involved complaint" falls well short both of satisfying this requirement and of setting forth "the essential facts ... with simplicity, brevity, clarity and certainty," as required by *Heathman.* 372 P.2d at 992.[13]

¶ 28 Although not intended to be an exhaustive list, we point out two further deficiencies of the complaint. First, the section of the complaint that purports to describe the "material misrepresentations" that Defendants made to Plaintiffs falls short of doing so with particularity. For the most part, Plaintiffs use the passive voice in this section, failing to identify exactly who made the alleged misrepresentations. For example, Plaintiffs allege that they "were falsely told that professional golfers such as Fred Couples, Craig Stadler and Fuzzy Zoeller were substantial investors in Ganter USA." Without any indication of who made this statement to them,[14] however, we can hardly conclude that Plaintiffs have pleaded this allegation with particularity.[15] Certainly one requirement for pleading fraud with particularity is to identify the offender. *See Arena Land & Inv. Co. v. Petty,* 906 F.Supp. 1470, 1476 (D.Utah 1994) (" '[In a federal securities fraud case, rule 9(b) requires that] individual plaintiffs should identify particular defendants with whom they dealt directly.' ") (quoting *Seattle–First Nat'l Bank v. Carlstedt,* 800 F.2d 1008, 1011 (10th Cir.1986) (per curiam)), *aff'd,* 69 F.3d 547 (10th Cir. 1995).

¶ 29 Second, to the extent that Plaintiffs base their claim on the offering memorandum that Mr. Sabey drafted, many of the Plaintiffs have not sufficiently pleaded reliance on that document. *See Gold Standard,*

constitute [the fraud] charges." ' " *Id.* at ¶ 16 (citations omitted).

13. We realize that it is very routine for plaintiffs to incorporate preceding paragraphs into the various counts of their complaints, and we do not intend for our opinion today to invalidate that practice. We have no problem with plaintiffs deciding, in drafting their complaints, to state the facts first and then to incorporate those facts by reference in the context of setting forth their individual claims. In most cases, this practice works well. However, due to the enormous length and lack of conciseness in Plaintiffs' description of the facts of this case, it was incumbent upon Plaintiffs to do more than simply refer the trial court to all 660 of the paragraphs preceding the discussion of their common law fraud claim. At a minimum, they should have listed specific paragraphs from their facts section that supported each element of their common law fraud claim. By doing so, they would have spared the courts the burden, identified in the text above, of sifting through the hundreds of paragraphs of the complaint to verify that they alleged facts supporting each element of their claim.

14. Another section of the complaint might shed some light on who made the "professional golfers" statement to Plaintiffs. The section describing plaintiffs David and Sharon Boll's situation states that at one point, Mr. Degenhardt "invited Mr. Boll and Mr. Peterson to his office to discuss a golf course venture. Mr. Boll was told that there were professional golfers who had already invested in the project." Plaintiff Scott Frogley had a similar experience.

Mr. Degenhardt, who apparently made these statements to the Bolls and to Mr. Frogley (although we cannot be sure since, again, even these more specific explanations are in the passive voice), is not a party to this action. Therefore, if these are the occasions to which Plaintiffs are referring in their "professional golfers" allegation, then this allegation is entirely without merit.

15. Furthermore, this allegation fails to provide other "relevant surrounding facts" regarding the misrepresentation, *Armed Forces,* 2003 UT 14 at ¶ 16, 70 P.3d 35, such as the time and location at which it was uttered. *See DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.) (requiring a complaint alleging fraud to include "the who, what, when, where, and how: the first paragraph of any newspaper story"), *cert. denied,* 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990); *McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 228 (1st Cir.1980) ("Rule 9 requires specification of the time, place, and content of an alleged false representation."); *Cook v. Zions First Nat'l Bank,* 645 F.Supp. 423, 425 (D.Utah 1986) (dismissing a complaint under rule 9(b), in part because plaintiffs failed to "set forth in specific terms the time, place, content, and manner of each defendant's alleged material misrepresentations or otherwise fraudulent conduct").

*Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1066–67 (Utah 1996) (including reliance as one of nine elements of fraud). In the introductory paragraphs of their complaint, Plaintiffs make the broad statement that they "relied on the misrepresentations made to them in the Offering Documents." However, the section of the complaint that discusses each plaintiff's individual situation does not state that all of the plaintiffs read, or even saw, the documents. While it does say, for example, that plaintiffs Lennie and Beverly Bane "were shown ... an Offering Document," nowhere in the description of plaintiffs David and Sharon Boll's situation, nor in that of many others, does it even mention the offering documents. In fact, according to the description of the Bolls' situation, the Bolls made their investment decision in reliance on a series of in-person meetings with Mr. Degenhardt, who is not even a party to this litigation.

¶ 30 Because Plaintiffs have failed to plead "the circumstances constituting fraud ... with particularity," Utah R. Civ. P. 9(b), we affirm the dismissal of Plaintiffs' common law fraud claim.[16]

---

**16.** Our affirmance of the dismissal of this claim, at least as against the Ganter defendants, should come as no surprise to Plaintiffs. At oral argument, Plaintiffs' counsel stated Plaintiffs' position as follows: "For the most part, this is not a case based upon the Ganter defendants' direct liability or participation directly in these frauds. Rather, their liability is based upon principles of secondary liability as control persons under Utah securities laws as well as conspiracy and aiding and abetting principles." Counsel went on to say that it was principally Mr. Degenhardt who had committed the primary fraud offenses.

**17.** It may well be proper to affirm the dismissal of all the assigned claims on rule 9(b) grounds. *See Dipoma v. McPhie*, 2001 UT 61, ¶ 18, 29 P.3d 1225 ("[A]n appellate court may affirm the judgment appealed from ' "if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action[.]" ' ") (quoting *Limb v. Federated Milk Producers Ass'n*, 23 Utah 2d 222, 461 P.2d 290, 293 n. 2 (1969) (plurality opinion)) (other citation omitted). Despite Plaintiffs' titling the claims as "breach of fiduciary duty" and the like, these claims really appear to be fraud-based claims.
For example, Plaintiffs summarize their entire case in the first paragraph of their appellate

### 2. Securities Fraud

¶ 31 Plaintiffs drafted the securities fraud section of their complaint similarly to the common law fraud section. That is, the first paragraph of the section, paragraph 696 of the complaint, incorporates "[t]he foregoing paragraphs numbered 1–695," and the remaining paragraphs of the section simply list the elements of securities fraud and allege that Defendants fulfilled each element. For the reasons stated in the previous section of this opinion, we affirm the dismissal of this claim.

### C. Assigned Claims

¶ 32 As previously noted, the trial court dismissed the assigned claims of breach of fiduciary duty and breach of contract because it concluded that "the Complaint contains no allegations of damage to Ganter USA as a result of these actions." It then dismissed the claim of breach of good faith and fair dealing because this claim was predicated on the inadequately pleaded breach of contract claim. Finally, it dismissed the claim of aiding and abetting breach of fiduciary duty as not being cognizable under Utah law.[17]

---

brief's statement of facts as follows: "This case concerns the fraudulent scheme concocted and perpetrated by Defendants to induce Plaintiffs to invest nearly $5 million that Defendants used for their own personal benefit and gain." Also, in their complaint's description of the breach of fiduciary duty claim, Plaintiffs allege that "Defendants breached their fiduciary duties by, among other things, participating, assisting, and or covering up fraudulent activities and other wrongful acts at Ganter USA."
As the assigned claims, therefore, appear to be claims " 'sounding in fraud,' " they are also subject to rule 9(b). *State Farm Mut. Auto. Ins. Co. v. Parrish*, 899 P.2d 285, 290 (Colo.Ct.App.1994) (quoting *Zucker v. Katz*, 708 F.Supp. 525, 530 (S.D.N.Y.1989)), *cert. denied*, No. 95SC179, 1995 Colo. LEXIS 494 (July 24, 1995). *Accord McKinney v. State*, 693 N.E.2d 65, 71 (Ind.1998); *Bender v. Phillips*, 8 P.3d 1074, 1078 (Wyo.2000). *See Robison v. Caster*, 356 F.2d 924, 925 (7th Cir. 1966) ("The plaintiff admits that the breach of fiduciary relationship which he is attempting to assert is a 'scheme to defraud.' Rule 9(b) must therefore be followed."). *Cf. Renn v. Utah State Bd. of Pardons*, 904 P.2d 677, 681 (Utah 1995) ("[T]he name a party or a court applies to an action for an extraordinary writ is not binding if the true nature of the petition is other than the name applied to it."). If we analyzed these

¶ 33 We agree with the trial court that Plaintiffs failed to plead damages.[18] The complaint alleges that the money Plaintiffs invested was used to "buy out" other investors and to pay such things as "unpaid attorneys fees and other unpaid creditors." Although we readily understand Plaintiffs' frustration in being told that their money would be used for a different purpose—and they would have been allowed to proceed with their suit in fraud or misrepresentation had they adequately pleaded it—we fail to see how Ganter USA, the supposed victim of the assigned claims, was harmed by having its past-due bills and other listed expenses paid. We decline Plaintiffs' invitation to recognize "deepening insolvency," the only theory of damages that Plaintiffs argue on appeal, as sufficient damages. Although deepening insolvency might harm a corporation's shareholders, it does not, without more, harm the corporation itself.

¶ 34 Because Plaintiffs' complaint fails to plead any damages sustained by Ganter USA, we affirm the dismissal of Plaintiffs' assigned claims.[19]

### D. Secondary Fraud Claims

¶ 35 The trial court dismissed Plaintiffs' aiding and abetting fraud claim because it was "not cognizable under Utah law." It dismissed the civil conspiracy claim because this claim was "predicated on the fraud and breach claims," which the court had already dismissed.

¶ 36 Both of Plaintiffs' secondary fraud claims require, as one of their essential elements, an underlying tort. *See Gildea v. Guardian Title Co.*, 970 P.2d 1265, 1271 (Utah 1998) (civil conspiracy to defraud); *Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1290 n. 17 (Utah 1993) (civil conspiracy); *Gabriel Capital, L.P. v. NatWest Fin., Inc.*, 94 F.Supp.2d 491, 511 (S.D.N.Y.2000) (aiding and abetting fraud); *Wells Fargo Bank v. Arizona Laborers*, 201 Ariz. 474, 38 P.3d 12, 23 (2002) (aiding and abetting fraud); *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 665 A.2d 1038, 1050 (1995) (aiding and abetting fraud). Therefore, to sufficiently plead their secondary fraud claims, Plaintiffs were obligated to adequately plead the existence of such a tort. *See, e.g., Mackey v. Cannon*, 2000 UT App 36, ¶ 13, 996 P.2d 1081 ("[D]ismissal in this case would have been appropriate if [plaintiff] had ... not alleged sufficient facts to meet all the elements of a breach of contract claim."). *Cf. Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶¶ 63–65, 70 P.3d 17 (affirming dismissal of claim of intentional

claims under rule 9(b), we would surely dismiss the claims because, like Plaintiffs' primary fraud claims, the complaint describes the assigned claims by merely incorporating the hundreds of preceding paragraphs and then stating the legal elements of the claims. However, we will not do so in this case because we can readily dispose of the assigned claims on the more straightforward ground that Plaintiffs have failed to plead damages.

18. Plaintiffs take issue with the trial court's recognition of their failure to plead damages, arguing that this conclusion was a finding of fact, which the trial court should not make at this early stage of the proceedings. *See Krouse v. Bower*, 2001 UT 28, ¶ 2, 20 P.3d 895. However, Plaintiffs' contention is erroneous. A court can decide something as a matter of law at the dismissal stage of the proceedings, *see, e.g., Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶¶ 57, 62, 63, 70 P.3d 17 (agreeing with trial court's conclusion that, despite plaintiff's statement to the contrary in his claim for intentional infliction of emotional distress, plaintiff "had failed to plead facts indicating that [defendants'] conduct was [sufficiently] extreme, outrageous, and intolerable"), and that is what the trial court did in this case. It concluded that, as a matter of law, the type of damages Plaintiffs had alleged in their complaint were legally insufficient. Therefore, the trial court did not decide a factual issue in concluding that Plaintiffs' complaint did not plead damages.

19. Since we decide the aiding and abetting breach of fiduciary duty claim on the basis discussed above, we do not need to decide the issue, reached by the trial court, of whether this cause of action is cognizable under Utah law in the first place. *See Dipoma*, 2001 UT 61 at ¶ 18, 29 P.3d 1225 ("[A]n appellate court may affirm the judgment appealed from ' "if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action[.]" ' ") (quoting *Limb*, 461 P.2d at 293 n. 2) (other citation omitted). We only hold that if this cause of action is cognizable in Utah, it includes damages as an essential element, *see Wells Fargo Bank v. Arizona Laborers*, 201 Ariz. 474, 38 P.3d 12, 23 (2002), and Plaintiffs have failed to adequately plead that element.

infliction of emotional distress because plaintiff had failed to adequately plead the essential element of outrageous and intolerable conduct). And insofar as the underlying tort is fraud, the fraud must be pleaded with particularity, even though in this context the fraud is simply an element of the claim rather than the claim itself. *See State Farm Mut. Auto. Ins. Co. v. Parrish,* 899 P.2d 285, 288 (Colo.Ct.App.1994) (rejecting the argument that "if fraudulent acts are alleged to have been undertaken as part of a conspiracy, it is not necessary to allege with particularity the actual fraudulent acts allegedly causing damages"), *cert. denied,* No. 95SC179, 1995 Colo. LEXIS 494 (July 24, 1995). *See also* Utah R. Civ. P. 9(b) ("In *all* averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.") (emphasis added).

¶ 37 As we have already held, Plaintiffs have not adequately pleaded their primary fraud claims. Therefore, we affirm the dismissal of the aiding and abetting fraud claim,[20] as well as the civil conspiracy claim to the extent that it is predicated on fraud.

¶ 38 We take care to note, however, that although the gist of Plaintiffs' allegations seems to be fraud, the civil conspiracy section of the complaint does not explicitly rely on any of the primary fraud claims as the underlying tort.[21] Indeed, this section does not specify which of the alleged torts is intended to underlie the civil conspiracy claim.[22] Therefore, the fact that Plaintiffs did not adequately plead fraud does not necessarily invalidate altogether the civil conspiracy claim. However, as we have discussed in the previous sections of this opinion, Plaintiffs have not adequately pleaded *any* of the basic torts they allege, and for that reason we readily affirm the dismissal of their civil conspiracy claim.

¶ 39 An additional ground exists for affirming the dismissal of the aiding and abetting fraud claim and possibly the civil conspiracy claim. The aiding and abetting fraud claim as a whole (as opposed to only the "underlying fraud" element of the claim), and possibly the civil conspiracy claim as a whole,[23] are subject to rule 9(b). *See Williams v. State Farm Ins. Co.,* 656 P.2d 966, 972 (Utah 1982) ("The Rule 9(b) requirement should not be understood as limited to allegations of common-law fraud.... [I]t reach[es] all circumstances where the pleader alleges the kind of misrepresentations, omissions, or other deceptions covered by the term 'fraud' in its broadest dimension."); *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 194 (1st Cir.1996) (affirming the dismissal of a conspiracy claim "[b]ecause the plaintiffs-appellants have failed to meet the requirements of Rule 9"); *Hayduk v.*

---

**20.** Since we decide Plaintiffs' aiding and abetting fraud claim on this basis, we do not reach the issue of whether this cause of action is cognizable under Utah law. Rather, we only hold that even if it does exist, Plaintiffs have not adequately pleaded it.

**21.** Even so, based on representations Plaintiffs made on appeal, it appears that Plaintiffs intend for fraud to be their principal underlying tort. In their appellate brief, Plaintiffs spend several paragraphs describing Defendants' concerted behavior, and they ultimately refer to the alleged conspiracy as a "scheme and conspiracy to defraud Plaintiffs." They also allege in their brief that Defendants "affirmatively ratified their support for ... the fraud they knew was being perpetrated." Finally, at oral argument, the author of this opinion made the statement that the secondary fraud claims "are secondary, and they turn on an underlying fraud claim, and that fraud claim needs to be pled with particularity." Plaintiffs' counsel replied to this statement, "Correct, Your Honor."

**22.** Paragraph 682 of the complaint states merely that Defendants conspired to commit "numerous tortuous acts against Ganter USA and the Plaintiffs." Paragraph 683 is slightly more specific, alleging that "Defendants' tortuous conduct constituted a breach of their duties to Ganter USA." Similarly, paragraph 684 alleges that Defendants "breach[ed] their fiduciary duties and/or committ[ed] their tortuous acts against the Plaintiffs."

**23.** We say "possibly" because to the extent that the torts underlying the civil conspiracy claim are nonfraud torts, it is not clear whether rule 9(b) applies. *See* Utah R. Civ. P. 9(b) (subjecting "all averments of *fraud or mistake*" to the particularity requirement) (emphasis added). The rule might apply to all civil conspiracy charges regardless of the underlying tort, *see Williams v. State Farm Ins. Co.,* 656 P.2d 966, 971 (Utah 1982) (stating that fraud, conspiracy, and negligence are subject to the particularity requirement), but without a Utah case directly on point, we cannot be sure. However, as previously discussed, the rule unquestionably applies to the extent that fraud is the underlying tort.

*Lanna,* 775 F.2d 441, 443 (1st Cir.1985) ("[W]here fraud lies at the core of the action, Rule 9(b) applies."); *Adams v. NVR Homes, Inc.,* 193 F.R.D. 243, 250 (D.Md.2000) ("The requirements of Rule 9(b) apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud.").

¶ 40 Plaintiffs have not pleaded either of their secondary fraud claims with particularity. They have pleaded both of these causes of action in the same perplexing manner in which they pleaded their primary fraud claims. That is, the first paragraph of both of the secondary fraud claims simply "incorporate[s]" all the preceding paragraphs (amounting to 671 incorporated paragraphs for aiding and abetting fraud and 680 for civil conspiracy), and the remaining paragraphs of those sections simply list the legal elements of the torts. As noted in our discussion of Plaintiffs' primary fraud claims, this pleading method is unacceptable, especially for complaints of the length and complexity of the instant one, as it does not identify "[t]he relevant surrounding facts ' ". . . with sufficient particularity to show what facts are claimed to constitute [the] charges." ' " *Armed Forces Ins. Exch. v. Harrison,* 2003 UT 14, ¶ 16, 70 P.3d 35 (citations omitted).

¶ 41 For the above reasons, we affirm the dismissal of Plaintiffs' entire complaint.

## II. REQUEST TO AMEND THE COMPLAINT

¶ 42 We readily conclude that the trial court did not abuse its discretion in denying Plaintiffs' request for leave to amend their complaint. Plaintiffs' request was indistinguishable, in all material respects, from the request made in *Holmes Development, LLC v. Cook,* 2002 UT 38, 48 P.3d 895. In that case, the defendants filed a motion to dismiss the complaint, *see id.* at ¶ 15, and at the end of the plaintiff's memorandum in opposition to that motion, the plaintiff appended the following short request:

In the event this Court determines that [plaintiff's] Complaint fails to adequately plead the claims and causes of action addressed above, [plaintiff] moves this Court for leave to amend its Complaint pursuant

to Rule 15 of the Utah Rules of Civil Procedure. Case law interpreting Rule 15 recognizes that the rules of Civil Procedure liberalize pleading requirements and require that the parties be afforded the privilege of presenting whatever legitimate contentions they may have pertaining to the dispute. *Timm v. Dewsnup,* 851 P.2d 1178 (Utah 1993). Rule 15 further requires that leave to amend "shall be freely given when justice so requires."

*Id.* at ¶ 56. The trial court in *Holmes* denied this request for leave to amend. *See id.* at ¶ 17.

¶ 43 On appeal, the Utah Supreme Court recognized that a litigant seeking leave to amend "must file a motion that 'shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought.' " *Id.* at ¶ 57 (quoting Utah R. Civ. P. 7(b)(1)). It also recognized that "a motion for leave to amend must be accompanied by a memorandum of points and authorities in support and by a proposed amended complaint." *Id.* (citation omitted).

¶ 44 The Court affirmed the trial court's denial of leave to amend, explaining its decision as follows:

In this case, [plaintiff] never filed an actual motion for leave to amend. Further, [plaintiff's] request failed to "state with particularity the grounds" upon which it based its motion for leave to amend. Utah R. Civ. P. 7(b)(1). [Plaintiff] merely cited rule 15(a) and noted that leave to amend should be freely given. [Plaintiff] never articulated a single reason why the trial court should have granted it leave to amend and never provided the trial court a proposed amended complaint so that the court could determine the changes that [plaintiff] intended to make. By relegating its motion to the end of the memoranda opposing the motions to dismiss, [plaintiff's] motions did not comply with Utah's formal motion practice rules. *See Glenn v. First Nat'l Bank in Grand Junction,* 868 F.2d 368, 370 (10th Cir.1989); *Long [v. Satz,* 181 F.3d 1275, 1279–80 (11th Cir. 1999) ]. Simply put, [plaintiff's] abbreviated requests for leave to amend its complaint[,]

"lacking ... statement[s] of the grounds for amendment and dangling at the end of [its] memorand[a, do] not rise to the level of a motion for leave to amend." *Calderon [v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1187 (10th Cir.1999)]. Therefore, because [plaintiff's] motions for leave to amend its complaint were insufficient, the trial court did not abuse its discretion in denying the motions.

*Holmes*, 2002 UT 38 at ¶ 59, 48 P.3d 895 (alterations contained in *Calderon* quotation in original; all others added). *See also King v. George Schonberg & Co.*, 233 A.D.2d 242, 650 N.Y.S.2d 107, 108 (1996) ("Leave to replead this cause of action was properly denied for failure to submit the proposed pleading or set forth its merit.").

¶ 45 As noted, the present case is indistinguishable in all material respects from this controlling authority. We affirm the denial of leave to amend on that basis.

 ¶ 46 In their reply brief, Plaintiffs point out an apparent inconsistency in the trial court's decision, which we wish to address. They mention that "the trial court dismissed Plaintiffs' entire complaint 'without prejudice' but denied Plaintiffs leave to amend."

¶ 47 At first glance, the concepts of "dismissal without prejudice" and "denial of leave to amend" might seem to be incompatible. However, they are not invariably incompatible, and in fact, this decision is the only decision the trial court could have made un-der the circumstances. On the one hand, the court did not have before it an adequately pleaded complaint, so it had to dismiss the complaint, yet the dismissal had to be without prejudice because it was based upon the inadequacy of the pleadings, not the merits of the case. On the other hand, as discussed above, the court did not have before it a proper motion to amend, so it could not have granted the request for leave to amend. Therefore, the court's decision to dismiss without prejudice and to deny leave to amend was, despite the apparent inconsistency, correct.[24]

## CONCLUSION

¶ 48 Because Plaintiffs failed to adequately plead all of the claims they are now appealing, we affirm the trial court's dismissal of their complaint. We also affirm the trial court's denial of their request for leave to amend the complaint, which was not properly made.

¶ 49 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and RUSSELL W. BENCH, Judge.

---

24. According to Plaintiffs' reply brief, upon receiving the trial court's decision, Plaintiffs "assume[d] that the Complaint had been dismissed on the merits and that [they] had no option but to appeal the dismissal." However, this assessment was incorrect. Plaintiffs had another course of action available to them: they could have filed a new lawsuit.

They also could have filed a proper motion to amend. Although the court had already denied their request for leave to amend, the Ganter defendants told Plaintiffs, in a letter sent shortly after the trial court rendered its decision, that they "would not object to the filing ... of a Rule 15(a) motion for leave to amend together with a proposed amended complaint." *See* Utah R. Civ. P. 15(a) (permitting parties to amend their pleadings "by written consent of the adverse party").

Rather than taking advantage of either of these courses of action, Plaintiffs chose to "stand on [their] complaint" by pursuing this appeal. *Bonneville Tower Condo. Mgmt. Comm. v. Thompson Michie Assocs., Inc.*, 728 P.2d 1017, 1019 (Utah 1986) (per curiam). *See Glenn v. First Nat'l Bank*, 868 F.2d 368, 371 (10th Cir. 1989) ("Appellants availed themselves of none of their legal options. Appellants' failures are well beyond 'mere technicalities' and this court will not protect them from their own inaction.").