Sidney SEFTEL, Theresa Seftel, and Michael Landes, Plaintiffs and Appellants,

v.

CAPITAL CITY BANK, a Utah corporation, Defendant and Respondent.

CAPITAL CITY BANK, a Utah corporation, Counterclaimant,

v.

Sidney SEFTEL, Theresa Seftel, Michael Landes, Utah State Tax Commission, Crossroads Plaza Associates, a Utah joint venture and general partnership, Young Electric Sign Company, a Utah corporation, and Olympus Hills Shopping Center, LTD., a Utah limited partnership, Counterclaim Defendants.

No. 870312–CA.

Court of Appeals of Utah.

Jan. 12, 1989.

Rehearing Denied January 31, 1989.

---

Daniel W. Jackson (argued), Salt Lake City, for plaintiffs and appellants.

David M. Connors (argued), LeBoeuf, Lamb, Leiby & McRae, Salt Lake City, for Landes.

Steven T. Waterman (argued), Herschel J. Saperstein, Marco B. Kunz, Watkiss & Campbell, Salt Lake City, for defendant and respondent.

Before BILLINGS, JACKSON and ORME, JJ.

BILLINGS, Judge:

Plaintiffs/appellants, Sidney Seftel, Theresa Seftel, and Michael Landes, ("guarantors") appeal from the trial court's summary judgment dismissing their complaint and granting defendant/respondent, Capital City Bank, ("Capital") judgment in the amount of $293,319.64 and issuing a decree of foreclosure. Guarantors seek a reversal of the trial court's order. We affirm.

## FACTS

On December 24, 1979, Bagel Nosh Intermountain, Ltd., ("Bagel Nosh") executed a note in favor of Capital in the principal amount of $300,000. Under the terms of the note, the Small Business Administration ("SBA") was a 90% participating lender. The note also provides it is to be enforced in "accordance with applicable federal law."

As additional consideration for the loan, guarantors each executed unconditional personal guaranties. The guaranties were secured by trust deeds to real property

owned by guarantors and located at Snowbird. The guaranties were executed on SBA forms in favor of both the SBA and Capital as "co-lenders." Specifically, the guaranties state:

In order to induce Capital City Bank and SBA (hereinafter called "Lender") to make a loan ... to Bagel Nosh Intermountain, LTD. (Inc.) ... (hereinafter called the "Debtor"), the Undersigned hereby unconditionally guarantees to Lender, ... the due and punctual payment when due, ... of the principal of and interest on and all sums payable ... with respect to the note of the Debtor....

The Undersigned waives any notice of the incurring by the Debtor at any time of any of the Liabilities, and waives any and all presentment, demand, protest or notice of dishonor, nonpayment, or other default with respect to any of the Liabilities.... The Undersigned hereby grants to Lender full power, in its uncontrolled discretion and without notice to the undersigned ..., to deal in any manner with the Liabilities and the collateral, including, ... the following powers:

(a) To modify or otherwise change any terms of all or any part of the Liabilities ... to grant any extension or renewal thereof ... and to effect any release, compromise or settlement with respect thereto;

.   .   .   .   .

(d) To consent to the substitution, exchange, or release of all or any part of the collateral....

The obligations of the Undersigned hereunder shall not be released, discharged, or in any way affected, nor shall the Undersigned have any rights or recourse against Lender, by reason of any action Lender may take or omit to take under the foregoing powers.

On March 30, 1983, following several months of nonpayment, Bagel Nosh and Capital entered into a Loan Restructure Agreement ("Agreement") modifying the terms of the original note. The Agreement was signed by Sidney Seftel and provided in relevant part:

Capital ... agrees to modify the terms of the loan agreement dated December 24, 1979, between [Capital] and [Bagel Nosh] under the following conditions:

5. Sidney Seftel and Michael Landes personally guarantee [Capital's] loan to the Borrower. Each is personally liable for the entire indebtedness to [Capital]....

6. Any item in the loan agreement dated December 24, 1979, that is not specifically modified by this loan restructure agreement remains in full force.

Guarantors complied with the terms of the Agreement and made several payments thereunder.

On November 29, 1984, Bagel Nosh filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On March 11, 1986, guarantors filed this action for declaratory relief requesting the trial court to discharge them from any obligations under their personal guaranties on the grounds that Capital, (1) willfully impaired the collateral originally pledged to secure the note, (2) recklessly lost their security, and (3) substantially modified guarantors' obligations underlying the guaranties by the Loan Restructure Agreement.

Capital counterclaimed requesting the trial court to declare the guaranties and corresponding trust deeds valid enforceable obligations. Capital further requested a judicial decree of foreclosure on the trust deeds.

On July 25, 1986, Capital filed a motion for summary judgment on the issues in guarantors' complaint and Capital's counterclaim. Capital claimed the note, Agreement, and guaranties were all in default. Capital argued the guaranties were enforceable, thus, they were entitled to judgment as a matter of law because, (1) pursuant to Utah Code Ann. § 70A–3–301 (1978), as holder of the guaranties, Capital was entitled to enforce them, (2) guarantors by prior judicial admissions were estopped from denying liability, and (3) under the express provisions of the guaranties, guar-

antors waived the defenses set forth in their complaint.

In support of its motion for summary judgment, Capital submitted, among a number of documents, the affidavit of M.A. Allem, Capital's executive vice president. In his affidavit, Mr. Allem states in pertinent part that the "SBA is a participating lender in the loan of Capital City to Bagel Nosh to the extent of ninety percent (90%) of the outstanding unpaid balance."

On September 5, 1986, Capital filed the supplemental affidavit of Mr. Allem which stated:

> 5. Capital City is entitled to sue upon the loan instruments including acceleration of the maturity of the note and guaranties provided Capital City has obtained the written consent of SBA.
>
> 6. Capital City is the legal holder of the note and guaranties involved in this action, and Capital City has not transferred the note or guaranties to SBA and has been authorized in writing by SBA to sue upon the note and guaranties. . . .

On September 11, 1986, guarantors filed their memorandum in opposition to Capital's motion for summary judgment claiming for the first time that the SBA was an indispensable party, and thus must be joined in order for Capital to enforce the guaranties.

On February 4, 1987, the trial court issued its memorandum decision granting summary judgment in favor of Capital on all issues in the complaint and counterclaim. Guarantors appeal this order.

### I.

### RULE 19—INDISPENSABLE PARTIES

In its memorandum decision, the trial court found that Capital was entitled to enforce the guaranties and the SBA was not an indispensable party. Although we find the trial court did not properly analyze the issue of whether the SBA is an indispensable party, we affirm the trial court's decision as we find based upon the undisputed facts in the record, the SBA is not, as a matter of law, an indispensable party.

### Required Analysis Under Rule 19

In its February 4th memorandum decision the trial court stated:

> Plaintiffs have further alleged that an indispensable party, the Small Business Administration, has not been joined. That defense is without merit. In the first instance, the defense has not been pled, but additionally, the SBA is not under the present interpretation of the Rules of Procedure an indispensable party to this action.

Guarantors claim the trial court committed reversible error by permitting Capital to enforce the guaranties without making particularized findings pursuant to Rule 19 of the Utah Rules of Civil Procedure.[1] While actual *findings of fact* were not strictly required as this matter was presented on a motion for summary judgment, the guarantors' basic contention is well-taken. We note that Rule 19 of the Utah Rules is substantively similar to its federal counterpart, *see* Utah R.Civ.P. 19 compiler's notes, and in the absence of Utah authority, we resort to the more abundant federal case law for guidance. We also note that a party may raise the issue of failure to join an indispensable party at any time in the proceedings, including for the first time on appeal. *See, e.g., Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 104 (3rd Cir.1986). Accordingly, this issue is properly before us.

Ordinarily, a trial court's determination properly entered under Rule 19 will not be disturbed absent an abuse of discretion. *See, e.g., Bonneville Tower v. Thompson*

---

1. The portion of Utah R.Civ.P. 19 upon which guarantors rely provides:

   A person ... shall be joined as a party in the action if ... (2) he claims an interest in the subject matter and is so situated that his absence may ... (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

   Utah R.Civ.P. 19(a).

*Michie Assocs.,* 728 P.2d 1017, 1020 (Utah 1986); *Navajo Tribe of Indians v. New Mexico,* 809 F.2d 1455, 1471 (10th Cir.1987); *Walsh v. Centeio,* 692 F.2d 1239, 1241 (9th Cir.1982). Whether a party is indispensable to the action depends on a number of factors all "varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests." *Provident Tradesmens B. & T. Co. v. Patterson,* 390 U.S. 102, 119, 88 S.Ct. 733, 743, 19 L.Ed.2d 936 (1968).[2]

■ Federal authorities addressing the analytical requirements of Rule 19 uniformly require a court to follow a two-part inquiry. *See, e.g., Ogalalla Land Ltd. v. Wexpro Co.,* 587 F.Supp. 453, 454 (D.Wyo. 1984) (citing *Wright v. First Nat'l Bank,* 483 F.2d 73 (10th Cir.1973)). Pursuant to subsection (a), "a court must first determine whether an absent party has sufficient interest in the action to make it a necessary party," considering the criteria set forth in the Rule.[3] *Manygoats v. Kleppe,* 558 F.2d 556, 558 (10th Cir.1977). If, after the appropriate analysis, a party is deemed "necessary," a court must then proceed to subsection (b), and determine whether the party is indispensable, considering four factors: (1) to what extent a judgment rendered in the person's absence will prejudice him or her or those already parties; (2) the likelihood of reducing or avoiding prejudice by protective measures or provisions in the judgment; (3) the adequacy of the judgment which might be entered in the person's absence; and (4) the adequacy of the plaintiff's remedy if the action is dismissed for nonjoinder. *See* Utah R.Civ.P. 19(b). *See also Wright v. First Nat'l Bank of Altus, Oklahoma,* 483 F.2d 73, 75 (10th Cir.1973). In light of these factors, the ultimate test under Rule 19(b) is "whether in equity and good conscience the action should proceed." *Manygoats,* 558 F.2d at 558.

Furthermore, abstract generalizations are not a substitute for the analysis required under Rule 19. *Provident,* 390 U.S. at 124, 88 S.Ct. at 745.

The trial court in this action did not follow the analytical steps required by Rule 19. The court failed to address the two-step analysis set forth above to demonstrate that the undisputed facts support its ultimate conclusion. Instead, the trial court merely stated that "the SBA is not under the present interpretation of the Rules of Procedure an indispensable party to this action." Such conclusory statements do not comply with the rule. *See, e.g., Provident,* 390 U.S. at 124, 88 S.Ct. at 745; *Wright,* 483 F.2d at 75. As the Court declared in *Wright,* "[t]hese conclusionary statements are of no value because the court finds no facts to support them." 483 F.2d at 75. (the trial court in *Wright* stated "complete relief cannot be afforded the remaining parties for all the reasons set out in Rule 19").

However, a trial court's failure to follow the two-step inquiry under Rule 19 is harmless error, if, upon a review of the record, there is clear evidence to support the trial court's ultimate conclusion. *See Acton v. Deliran,* 737 P.2d 996, 997 (Utah 1987).

---

**2.** *Provident* is the landmark case interpreting Rule 19 of the Federal Rules of Civil Procedure, and it has been cited with approval in a number of Utah decisions. *See, e.g., Hiltsley v. Ryder,* 738 P.2d 1024, 1025 n. 3 (Utah 1987); *State v. Toledo,* 699 P.2d 710, 711 n. 4 (Utah 1985); *Sanpete County Water Conservancy Dist. v. Price River Water Users Assoc.,* 652 P.2d 1302, 1306 n. 5 (Utah 1982).

**3.** Utah R.Civ.P. 19(a) identifies the criteria a court must consider when determining whether a party is necessary and provides:

(a) *Persons to be joined if feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. . . .

As a general contract rule, joint obligees are deemed indispensable parties in a suit against an obligor. *See, e.g., Brackin Tie, Lumber & Chip Co. v. McLarty Farms, Inc.,* 704 F.2d 585, 586 (11th Cir.1983) (a review of the case law reveals that the majority of courts hold joint obligees are indispensable); *Harrell and Sumner Contracting Co. v. Peabody Petersen Co.,* 546 F.2d 1227, 1229 (5th Cir. 1977); *Bry-Man's, Inc. v. Stute,* 312 F.2d 585, 587 (5th Cir.1963); *Purcel v. Wells,* 236 F.2d 469, 472 (10th Cir.1956); *Fremon v. W.A. Sheaffer Pen Co.,* 209 F.2d 627, 633–34 (8th Cir.1954); *Hanna Mining Co. v. Minnesota Power and Light Co.,* 573 F.Supp. 1395, 1399 (D.Minn.1983). *See also* C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure,* § 1613 at 185–86 (2d ed.1986). Joint obligees are ordinarily considered indispensable because "[o]bligors have a 'right to stand upon their contract and insist that they shall not be harassed with different actions or suits to recover parts of one single demand.'" *Bry-Mans,* 312 F.2d at 587 (citation omitted). (quoting *McAulay v. Moody,* 185 F. 144 (C.C.Ore.1911)).

Capital contends that the undisputed facts in the record demonstrate there is no possibility of multiple lawsuits because the SBA has no legal interest in and, therefore, cannot enforce the guaranties. Capital argues on appeal that the SBA is not a party to the underlying note and has not funded any portion of the loan to Bagel Nosh. Furthermore, Capital claims that the SBA has given Capital written authorization to sue on the guaranties. Therefore, Capital claims the SBA is not, as a matter of law, an indispensable party. To support its allegations, Capital directs our attention to the affidavit of M.A. Allem which states that "Capital City is the legal holder of the note and guaranties involved in this action and has been authorized in writing by the SBA to sue upon the note and guaranties and accelerate the maturity thereof."

No objection was made below to this affidavit and no counter affidavit was filed, thus we accept the factual allegations as true on appeal. *See Trimble Real Estate v. Monte Vista Ranch,* 758 P.2d 451, 455 (Utah Ct.App.1988); *Salt Lake City Corp. v. James Constructors Inc.,* 761 P.2d 42, 46 (Utah Ct.App.1988). Accordingly, Mr. Allem's affidavit establishes that the SBA has given Capital written authorization to sue upon the note and the guaranties, and thus, based on the undisputed facts before us is not an indispensable party.

We do not, however, suggest that absent such authorization by the SBA, the SBA would *necessarily* be an indispensable party. Although the guaranties expressly run to both Capital and the SBA, suggesting at first blush that both would be indispensable to any action seeking enforcement of the guaranties, the only obligation guarantied is the $300,000 note, which is payable by Bagel Nosh *solely* to Capital. So long as Capital is the holder of the note, as a matter of ordinary commercial law there is no obligation due under the note from Bagel Nosh to the SBA and, seemingly, no underlying obligation of Bagel Nosh which the guarantors can be said to have guarantied to the SBA. However, federal law and extensive federal regulation govern these transactions which might conceivably require a different analysis but one we need not reach in this case to find that the SBA is not an indispensable party as a matter of law. Accordingly, we affirm the trial court's determination.

## II.

## SUMMARY JUDGMENT DISMISSING GUARANTORS' COMPLAINT

To determine whether summary judgment was properly entered, we employ the same analytical standard as that of the trial court. Because summary judgment deprives a party of its opportunity to present its case on the merits, we review the facts and inferences in the light most favorable to the party against whom the judgment was granted. *Atlas Corp. v. Clovis Nat'l Bank,* 737 P.2d 225, 229 (Utah 1987). If, after a review of the record, we conclude that a genuine issue of material fact exists, we must reverse the summary judgment and remand for further proceedings on that issue. *Id.*

After a careful review of the record in this case, we conclude the guarantors have failed to raise genuine issues of material fact and, as a matter of law, their defenses must fail. Accordingly, we affirm the trial court's order dismissing guarantors' complaint.

### Impairment of Collateral

▇▇▇ We first address whether guarantors waived their right to assert the defense of "impairment of collateral." Based on the express terms of the original guaranties dated December 24, 1979, we conclude guarantors waived this defense.

Ordinarily, when a creditor, by his actions, impairs the value of collateral securing the underlying obligation guaranteed by a guarantor, "either absolute or conditional, the guarantor will be discharged from his obligation to the extent of the impairment." *Valley Bank & Trust Co. v. Rite Way Concrete Forming, Inc.*, 742 P.2d 105, 108–09 (Utah Ct.App.1987) (citation omitted). A guarantor may, however, expressly waive his or her right to raise the defense of impairment of collateral. *Id.* at 109. *See also Continental Bank & Trust Co. v. Utah Sec. Mortgage, Inc.*, 701 P.2d 1095, 1097 (Utah 1985); *Heller v. United States Rock Wool Co.*, 93 Utah Adv.Rep. 8, 9 (Utah Ct.App.1988).

The provisions of the SBA guaranty agreements, signed by each of the guarantors, expressly waive an impairment defense:

[Guarantors] ... consent to the *substitution, exchange, or release of all or any part of the collateral....*

The obligation of ... [Guarantors] shall not be released, discharged, or in any way affected, nor shall the [Guarantors] have any rights or recourse against [Capital], by reason of any action [Capital] may take or omit to take under the foregoing powers.

This language is clear and unequivocal. Guarantors have expressly consented to a waiver and release of their rights in the collateral. The Tenth Circuit, interpreting the identical provisions of an SBA guaranty, has similarly held that this provision amounts to a waiver by guarantors of their right to claim impairment of collateral. *See United States v. New Mexico Landscaping, Inc.*, 785 F.2d 843, 846–47 (10th Cir.1986).

We are not persuaded by guarantors' allegations that Capital acted "willfully." We are mindful that parties to an SBA guaranty do not waive an impairment of collateral defense where the acts of a lender are deemed "willful." *See New Mexico Landscaping*, 785 F.2d at 847–48. In order to demonstrate the requisite "willfulness" "a guarantor must allege more than 'gross neglect of a known duty.'" *Id.* at 848. "A guarantor ... must allege 'a purpose by the [Lender] to diminish the value of the security in order to intentionally injure the defendants.'" *Id.*

Guarantors in this action have not alleged in their original complaint such a purpose by Capital, nor did they submit affidavits to support such a position. Thus, we find no error in the trial court's order granting summary judgment on their impairment of collateral defense.

### Reckless Loss of Security/Modification of Obligation

We further find guarantors' remaining defenses, reckless loss of security and modification of the underlying obligation were properly dismissed. Guarantors have failed to demonstrate that Capital did not maintain a perfected security interest in the collateral at all relevant times. Furthermore, even if guarantors could identify some technical transgression in Capital's security interest, the language of the guaranties previously identified in this opinion clearly constitute a waiver of said transgressions.

Finally, we reject guarantors' contentions that they are discharged from their

obligations by reason of the Loan Restructure Agreement. Once again, the clear and unequivocal language of the guaranties empowers Capital "to modify or otherwise change any terms of all or any part" of the agreement.

Based on the foregoing, we affirm the trial court's summary judgment in favor of Capital.

JACKSON and ORME, JJ., concur.