2006 UT App 305

**Scott R. TURVILLE, Plaintiff and Appellant,**

v.

**J & J PROPERTIES, L.C.; James W. Ritchie; John Quitiquit; John T. Clark; Sherlene Clark; Clark Properties, Inc.; Tri–J Properties, L.L.C.; and Does 1–50, Defendants and Appellees.**

No. 20050248–CA.

Court of Appeals of Utah.

July 20, 2006.

Rehearing Denied Aug. 23, 2006.

Brian W. Steffensen, Salt Lake City, for Appellant.

R. Willis Orton, Alexander Dushku, Gregory S. Moesinger, Kirton & McConkie, George A. Hunt, Mark R. Anderson, Williams & Hunt, and Mark R. Gaylord, Ballard Spahr Andrews & Ingersoll, Salt Lake City, for Appellees.

Before GREENWOOD, Associate P.J., BILLINGS and McHUGH, JJ.

## OPINION

BILLINGS, Judge:

¶ 1 Plaintiff Scott R. Turville (Plaintiff) appeals three trial court rulings in favor of Defendants Tri–J Properties LLC (Tri–J); J & J Properties LC (J & J) and its members John Quitiquit and James W. Ritchie, in their individual capacities; and Clark Properties, Inc. (CPI) and its officers John T. Clark and Sherlene Clark, in their individual capacities. We affirm.

## BACKGROUND

¶ 2 In 1995, J & J, through its members Ritchie and Quitiquit, joined with CPI, through its officers Mr. and Mrs. Clark, to form Tri–J. Upon its formation, Tri–J bought 142 acres of property in Davis County. After Davis County accepted Tri–J's bid for the property, Mr. Clark, unbeknownst to Ritchie and Quitiquit, caused the property to be titled in CPI's name rather than Tri–J's. Mr. Clark later deeded the property back to Tri–J, only to subsequently deed 128 acres of the property (the Kaysville Property) back to CPI when Ritchie was out of the country. Fourteen acres of the property (the 14–Acre Property) remained in Tri–J's name. All of the transfers by Mr. Clark were without Ritchie's or Quitiquit's consent.

¶ 3 Sometime thereafter, Plaintiff met with Ritchie, Quitiquit, and Mr. Clark in hopes of purchasing the Kaysville Property and the 14–Acre Property from Tri–J. Tri–J's members were undecided as to whether to sell. However, Mr. Clark later contacted Plaintiff to see if he was still interested in purchasing the property. Mr. Clark informed Plaintiff that CPI owned the Kaysville Property and, despite Tri–J owning the 14–Acre Property, Mr. Clark had the authority to sell that parcel as well because he was manager of the 14–Acre Property. Mr. Clark also indicated that because he had cancer he did not think he would be able to develop the properties by himself.

¶ 4 Plaintiff subsequently made an offer to Mr. Clark to purchase the Kaysville Property and the 14–Acre Property, including their underlying debts, for $1,000,000. Mr. Clark agreed to sell the properties and, subsequently, caused CPI to deed the Kaysville Property to Plaintiff and granted Plaintiff a quitclaim deed to CPI's interest in the 14–Acre Property. Apparently, Mr. Clark also promised Plaintiff that he could convince Tri–J to transfer the 14–Acre Property to Plaintiff. In exchange, Plaintiff gave Mr. Clark a note for $1,000,000 and began developing the properties.

¶ 5 Despite Mr. Clark's promise to Plaintiff, Mr. Clark was unable to convince Tri–J to deed the 14–Acre Property to Plaintiff. Tri–J refused to turn over its interest with-

out proper compensation, alleging that Plaintiff had no legal right to the 14–Acre Property because Mr. Clark had no legal authority to transfer the property.

¶ 6 Plaintiff later contacted Mr. Clark about obtaining an easement across the 14–Acre Property. Mrs. Clark, at the direction of Mr. Clark, executed such an easement.

¶ 7 In December 1998, Tri–J and CPI sued Plaintiff, claiming Plaintiff had no legal rights to either of the properties because Plaintiff had obtained them by misrepresentation and without consideration. Tri–J and CPI requested that the trial court void the deed to the Kaysville Property and the subsequent easement encumbering the 14–Acre Property. Tri–J and CPI also filed a notice of lis pendens. Soon after filing the lawsuit against Plaintiff, Mr. Clark apparently made a deal with Ritchie and Quitiquit that they would receive $300,000 of the proceeds from the $1,000,000 note given to Mr. Clark by Plaintiff. Under their agreement, Mr. Clark would retain $700,000. In November 1999, without Plaintiff ever filing an answer to their complaint, Tri–J and CPI dismissed the lawsuit without prejudice.

¶ 8 On July 25, 2000, Plaintiff filed a complaint against Ritchie, Quitiquit, Tri–J, and J & J (collectively, Defendant Ritchie/Quitiquit), along with CPI and Mrs. Clark (collectively, Defendant Clark) and Mr. Clark.[1] In his complaint, Plaintiff set forth thirteen allegations: (1) alter ego, (2) fraud, (3) breach of contract, (4) breach of warranty, (5) breach of implied covenant of good faith and fair dealing, (6) malicious prosecution, (7) abuse of process, (8) slander of title, (9) intentional and/or negligent interference with current and prospective business relations/contracts, (10) intentional and/or negligent infliction of emotional distress, (11) defamation, (12) civil conspiracy, and (13) declaratory and other equitable relief. On July 26, 2000, Plaintiff served Ritchie with process.

¶ 9 After filing his complaint and serving Ritchie, Plaintiff took no further action, and in May 2001, the trial court issued an order to show cause why the case should not be dismissed for Plaintiff's failure to prosecute. Four months later, Plaintiff filed for a default judgment against Ritchie after Ritchie failed to appear and answer Plaintiff's complaint. The trial court issued a default judgment against Ritchie on September 24, 2001. In May 2002, Mr. Clark died of cancer.

¶ 10 Between late October and mid-November 2002, Plaintiff served his complaint on Tri–J, J & J, Quitiquit, CPI, and Mrs. Clark. Plaintiff never served Mr. Clark. On November 18, 2002, Defendant Clark answered Plaintiff's complaint and filed a notice of suggestion of death, noting for the record that Mr. Clark had died. On November 21, 2002, Ritchie moved to set aside the 2001 default judgment against him. At this time, Defendant Ritchie/Quitiquit also moved to dismiss Plaintiff's claims. Plaintiff cross-motioned for summary judgment.

¶ 11 In March 2003, counsel for Mr. Clark moved to dismiss Plaintiff's action against Mr. Clark with prejudice for Plaintiff's failure to file a motion for substitution of parties—specifically, the substitution of Mr. Clark's estate (the Estate of Mr. Clark)—within ninety days after the notice of suggestion of death, as required under Utah Rule of Civil Procedure 25. *See* Utah R. Civ. P. 25(a)(1).

¶ 12 At a March 24, 2003 hearing, the trial court granted Ritchie's motion to set aside judgment and denied Plaintiff's cross-motion for summary judgment. The trial court also partially granted Defendant Ritchie/Quitiquit's motion to dismiss, dismissing without prejudice Plaintiff's second (fraud) and twelfth (civil conspiracy) claims for relief because of procedural deficiencies. The trial court, however, granted Plaintiff leave to amend these claims to cure their deficiencies.[2]

¶ 13 In response, on April 9, 2003, Plaintiff filed his first amended complaint (First Amended Complaint). Plaintiff's First Amended Complaint not only amended claims two and twelve, it also added five

---

**1.** Throughout this opinion, we also refer to Defendants collectively, meaning Defendant Ritchie/Quitiquit and Defendant Clark.

**2.** The trial court gave Plaintiff fourteen days to amend his complaint.

additional parties: the Estate of Mr. Clark; Clark LHS, LLC; the Clark Charitable Grantor Trust; Ritchie Enterprises, LP; and Paul Ritchie. The complaint also included two new causes of action: unfair competitive practices and fraudulent conveyances. On that same day, Plaintiff filed a motion for leave to amend (Motion to Amend) to include the additional parties and claims set forth in his First Amended Complaint.

¶ 14 In a minute entry dated May 9, 2003, the trial court denied Mr. Clark's motion to dismiss for failure to substitute parties, ruling that because Mr. Clark was named but never properly served, nor had he appropriately entered an appearance, he was not a party to Plaintiff's action. *See* Utah R. Civ. P. 25(a)(1) (stating that failure to substitute within ninety days will result in dismissal as to the deceased party).

¶ 15 On June 30, 2003, the trial court denied Plaintiff's Motion to Amend. In July 2003, Defendant Ritchie/Quitiquit moved to strike Plaintiff's First Amended Complaint and moved for an award of summary judgment. In a September 22, 2003 minute entry, the trial court stayed Defendant Ritchie/Quitiquit's motion for summary judgment pending further discovery and granted its motion to strike Plaintiff's First Amended Complaint, resulting in the actionable complaint precluding Plaintiff's second and twelfth claims for relief.

¶ 16 On October 16, 2003, Ritchie moved for partial summary judgment, which the trial court ultimately granted as to Plaintiff's third, fourth, fifth, sixth, ninth,[3] tenth, and thirteenth claims against Ritchie. The trial court dismissed these claims with prejudice.

¶ 17 In November 2003, Defendant Clark, later joined by Defendant Ritchie/Quitiquit, moved to dismiss Plaintiff's complaint for failure to join the Estate of Mr. Clark as an indispensable party (Motion to Dismiss for Failure to Join an Indispensable Party).[4]

¶ 18 On December 5, 2003, Defendant Ritchie/Quitiquit renewed its motion for summary judgment after Plaintiff failed to conduct its requested discovery by the December 1 deadline. On that same day, Plaintiff also moved the trial court to reconsider his Motion to Amend and grant leave to file a second amended complaint.

¶ 19 At an April 14, 2004 hearing, the trial court: (1) denied Plaintiff's motion to reconsider his Motion to Amend; (2) denied Plaintiff's motion for summary judgment; (3) granted Defendants' Motion to Dismiss for Failure to Join an Indispensable Party; and (4) granted Defendant Ritchie/Quitiquit's renewed motion for summary judgment, dismissing all of Plaintiff's claims against Defendant Ritchie/Quitiquit.

¶ 20 On April 20, 2004, Ritchie, later joined by Quitiquit, J & J, and Tri–J, moved for attorney fees and costs (Motion for Attorney Fees and Costs).[5] The trial court granted the Motion for Attorney Fees and Costs on August 13, 2004.

¶ 21 On January 6, 2005, the trial court issued its findings of fact and conclusions of law, stating that judgment should be entered in favor of Ritchie for $29,235.26 in attorney fees and costs,[6] and in favor of the remaining Defendant Ritchie/Quitiquit members for $25,202.17 in attorney fees and costs. On January 14, 2005, Plaintiff paid Defendant Ritchie/Quitiquit its awarded attorney fees and costs. On February 8, 2005, the trial court entered judgment against Plaintiff.

---

3. The trial court dismissed Plaintiff's ninth claim against Ritchie "to the extent the ... [c]laim for [r]elief [wa]s based on the alleged negligence of defendant Ritchie."

4. Defendant Ritchie/Quitiquit joined in Defendant Clark's Motion to Dismiss for Failure to Join an Indispensable Party in December 2003.

5. Quitiquit, J & J, and Tri–J joined in Ritchie's Motion for Attorney Fees and Costs in May 2004.

6. This award included the $26,391.95 in attorney fees and costs Ritchie incurred from November 20, 2003, the date Defendant Clark moved to dismiss for failure to join the Estate of Mr. Clark as an indispensable party, as well as the $2843.31 in attorney fees and costs Ritchie incurred in filing his motion for summary disposition. *See Turville v. J & J Props.*, 2004 UT App 389 (mem.) (granting Ritchie's motion for summary disposition of Plaintiff's June 2004 appeal of the Motion for Attorney Fees and Costs because Plaintiff filed the appeal before the trial court ruled on the motion).

¶ 22 Plaintiff appeals the trial court's orders: (1) denying his Motion to Amend, (2) denying his motion to reconsider his Motion to Amend, (3) granting Defendants' Motion for Failure to Join an Indispensable Party, and (4) granting Defendant Ritchie/Quitiquit's Motion for Attorney Fees and Costs.[7]

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 23 First, Plaintiff argues the trial court improperly denied his Motion to Amend. This court reviews a trial court's denial of a motion to amend for an abuse of discretion, *see Kelly v. Hard Money Funding, Inc.*, 2004 UT App 44, ¶ 14, 87 P.3d 734, reversing only when "the decision exceeds the limits of reasonability," *Neztsosie v. Meyer*, 883 P.2d 920, 922 (Utah 1994) (quotations and citations omitted).

■ ¶ 24 Second, Plaintiff maintains that because the trial court wrongly determined the Estate of Mr. Clark was indispensable to Plaintiff's action, we should reverse the trial court's grant of Defendants' Motion to Dismiss for Failure to Join an Indispensable Party. We will not disturb "[a] trial court's determination [that] a party should be joined to an action ... absent an abuse of discretion." *Green v. Louder*, 2001 UT 62, ¶ 40, 29 P.3d 638.

■ ¶ 25 Finally, Plaintiff contests the trial court's award of attorney fees and costs to Defendant Ritchie/Quitiquit. We give the trial court "broad discretion" in granting an equitable award of attorney fees and will only reverse when the trial court abuses that discretion. *Hughes v. Cafferty*, 2004 UT 22,

¶¶ 20, 23, 89 P.3d 148. A trial court abuses its discretion when its fee award is unreasonable. *See Neztsosie*, 883 P.2d at 922 ("Under [the abuse of discretion] standard, we will not reverse unless the decision exceeds the limits of reasonability." (additional quotations and citations omitted)); *see also Kunzler v. O'Dell*, 855 P.2d 270, 275 (Utah Ct.App.1993) ("We will not overturn a trial judge's determination unless it is so unreasonable that it can be classified as ... a clear abuse of discretion.").

## ANALYSIS

### I. Motion to Amend [8]

¶ 26 Defendant Clark and Defendant Ritchie/Quitiquit responded separately to Plaintiff's complaint—Defendant Clark answered the complaint and Defendant Ritchie/Quitiquit moved to dismiss the complaint. At a March 24, 2003 hearing, the trial court granted Defendant Ritchie/Quitiquit's motion to dismiss without prejudice as to Plaintiff's second (fraud) and twelfth (civil conspiracy) claims for relief because Plaintiff failed to plead these claims with particularity in violation of Utah Rule of Civil Procedure 9(b). *See* Utah R. Civ. P. 9(b) ("In all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity."). [9] In doing so, however, the trial court gave Plaintiff fourteen days to amend his second and twelfth claims, warning Plaintiff that "[his] failure to properly file and serve an amended complaint [within that time period would] result in the dismissal of the [s]econd and [t]welfth [c]laims for [r]elief with prejudice." In response to the trial court's

---

**7.** Plaintiff also claims that the trial court demonstrated "callousness," "malice," and "bias" toward Plaintiff and Plaintiff's counsel, and therefore, that we should reverse the trial court's entry of judgment for attorney fees and costs, as well as any decisions the trial court made with respect to filing deadlines and discovery scheduling orders. Further, Plaintiff asserts we should disqualify the trial court from any future hearings in the case. However, as Plaintiff concedes, he raised the issue of bias for the first time on appeal. Because this court has held that the principle of preservation "applies where the bias or prejudice of a trial court is alleged for the first time on appeal," we refuse to consider Plaintiff's bias claim on appeal. *Wade v. Stangl*, 869 P.2d 9, 11 (Utah Ct.App.1994).

**8.** Our decision as to Plaintiff's Motion to Amend also applies to Plaintiff's motion to reconsider since the two motions are substantially equivalent.

**9.** Plaintiff based his civil conspiracy claim, in part, on Defendants' filing of a false and fraudulent lawsuit. *See Coroles v. Sabey*, 2003 UT App 339, ¶ 6, 79 P.3d 974 ("[I]nsofar as the underlying tort is fraud, the fraud must be pleaded with particularity, even though in this context the fraud is simply an element of the claim rather than the claim itself.").

grant of leave to amend claims two and twelve, Plaintiff filed his First Amended Complaint. Plaintiff's First Amended Complaint, however, not only amended claims two and twelve but also exceeded the trial court's instructions by incorporating two additional causes of action and adding five additional parties, including the Estate of Mr. Clark. In addition to his First Amended Complaint, Plaintiff also filed his Motion to Amend to add the additional parties and allegations that he had already proceeded to include in his First Amended Complaint. The trial court denied Plaintiff's Motion to Amend and struck Plaintiff's First Amended Complaint. Plaintiff appealed the trial court's denial of his Motion to Amend.

¶ 27 Utah Rule of Civil Procedure 15 governs the amendment of pleadings, providing that

[a] party may amend his pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Utah R. Civ. P. 15(a). Accordingly, before we address whether the trial court abused its discretion in denying Plaintiff's Motion to Amend, *see Kelly v. Hard Money Funding, Inc.*, 2004 UT App 44, ¶ 14, 87 P.3d 734, we must first ensure that under rule 15 the trial court in fact had the discretion to deny the motion. Namely, here Defendant Clark's answer to Plaintiff's complaint constituted a responsive pleading, and thus it is clear under rule 15 that the trial court had the discretion to deny Plaintiff's Motion to Amend as to Defendant Clark. In contrast, however, Defendant Ritchie/Quitiquit did not answer Plaintiff's complaint and instead moved to dismiss Plaintiff's claims. Therefore, we must first determine whether rule 15 also gave the trial court the discretion to deny Plaintiff's Motion to Amend as to Defendant Ritchie/Quitiquit.

¶ 28 Utah courts have held that a motion to dismiss does not constitute a responsive pleading, and thus, a party may still amend once without leave of court after a defendant files a motion to dismiss. *See Heritage Bank & Trust v. Landon*, 770 P.2d 1009, 1010 (Utah Ct.App.1989). But Utah courts have also held that once the trial court enters a *final* order of dismissal, a party loses all rights to amend its complaint, and "the plaintiff must [thereafter] move under [Utah Rule of Civil Procedure] 59(e) or 60(b) to reopen the judgment." *Nichols v. State*, 554 P.2d 231, 232 (Utah 1976) (emphasis added). A plaintiff's right to amend after a dismissal is not entirely restricted, however, if the trial court suggests that its dismissal is not final but rather *interlocutory* in nature. *See Barton v. Utah Transit Auth.*, 872 P.2d 1036, 1038 n. 3 (Utah 1994) (emphasis added); *see also Heritage Bank & Trust*, 770 P.2d at 1010 (holding that plaintiff had right to amend after trial court conditionally granted defendant's motion to dismiss, giving the plaintiff sixty days to produce evidence in support of his claim). In *Barton v. Utah Transit Authority*, the Utah Supreme Court determined that the trial court's dismissal order "was not final but rather interlocutory in nature" because "by allowing the plaintiffs to file a second amended complaint [subject to a successful motion to amend, the trial court] manifested its intent to retain jurisdiction and control over the case rather than dismissing it outright." 872 P.2d at 1038 n. 3. And therefore, the "plaintiffs' possible remedies at that time included filing an interlocutory appeal, or *moving to amend their complaint.*" *Id.* (emphasis added) (citation omitted).

¶ 29 In the present case, the trial court dismissed with leave to amend, indicating that its dismissal was not final in nature. Therefore, Plaintiff did not lose all rights to amend when the trial court granted the motion to dismiss. The question remains, however, whether Plaintiff, who did not amend once as a matter of course prior to dismissal, retained his right to amend without leave of court after the trial court's interlocutory dismissal. Our decision in the 1989 case of *Heritage Bank & Trust v. Landon* suggests that a plaintiff does not lose its right to amend once as a matter of course after entry of an interlocutory dismissal. *See* 770 P.2d at 1010 (holding trial court did not have discretion to deny plaintiff's motion to amend

once as a matter of course after trial court conditionally granted defendant's motion to dismiss, giving plaintiff additional time to produce evidence). But, importantly, in 1994, the Utah Supreme Court explained in *Barton* that after an interlocutory dismissal, a plaintiff's remedies include filing an interlocutory appeal or moving to amend its complaint. *See* 872 P.2d at 1038 n. 3. Although we recognize that, unlike here, the plaintiff in *Barton* did amend once as a matter of course prior to dismissal, *see id.* at 1037, we interpret *Barton's* articulation of a plaintiff's available remedies to set forth those remedies that are at a plaintiff's disposal anytime the trial court issues an interlocutory dismissal, regardless of whether the plaintiff amended as a matter of course prior to dismissal.

■ ¶ 30 Our interpretation of the court's statement in *Barton* aligns Utah law with the law of a number of federal courts that have determined that the right to amend as a matter of course under Federal Rule of Civil Procedure 15(a) terminates with a nonfinal order of dismissal and, thus, a plaintiff must thereafter move for leave to amend.[10] *See Czeremcha v. International Ass'n of Machinists & Aerospace Workers,* 724 F.2d 1552, 1556 & n. 6 (11th Cir.1984) (determining that if trial court indicates it does not intend its dismissal to be final, "the right to amend [as a matter of course] under [federal r]ule 15(a) terminates; the plaintiff, however, may still move the court for leave to amend, and such amendments should be granted liberally"); *see also Whitaker v. City of Houston,* 963 F.2d 831, 835 (5th Cir.1992) (adopting Eleventh Circuit's approach in *Czeremcha* ); *Dorn v. State Bank of Stella,* 767 F.2d 442, 443 (8th Cir.1985) ("After a complaint is dismissed, the right to amend under [Federal Rule of Civil Procedure] 15(a) terminates.

Although a party may still file a motion for leave to amend and amendments should be granted liberally, such a motion would be inappropriate 'if the court has clearly indicated either that no amendment is possible or that dismissal of the complaint also constitutes dismissal of the action.' " (internal citation omitted) (quoting *Czeremcha,* 724 F.2d at 1556 n. 6)); 3 James Wm. Moore et al., *Moore's Federal Practice* § 15.12[1] (3d ed.2005) (describing the Fifth and Eleventh Circuit Courts' approach as "predicated on the courts' desire to satisfy [r]ule 15's policy of freely granting leave to amend, while preventing plaintiffs from having the unfettered ability to reopen every case by merely filing an amendment").[11] And where a party moves for leave to amend after an interlocutory dismissal, a trial court may exercise its discretion in determining whether to grant the motion. *See Whitaker,* 963 F.2d at 837 (holding that unless the trial court indicates the dismissal is final, the right to amend as a matter of course terminates and the party must "move the court for discretionary leave to amend"); *Dorn,* 767 F.2d at 444 ("Assuming that in present circumstances the district court had authority to grant leave to amend, its refusal to do so would be reversed only for abuse of discretion."); *Czeremcha,* 724 F.2d at 1556 (remanding for the trial court to "weigh those factors which are relevant to the court's exercise of discretion in deciding whether to allow amendment"); *see also Smith v. NCAA,* 139 F.3d 180, 189 (3d Cir. 1998) ("[E]ven though [the plaintiff] no longer was entitled to amend her complaint as of right after the dismissal of her claim, it was within the district court's discretion to grant her leave to amend."), *rev'd on other grounds,* 525 U.S. 459, 119 S.Ct. 924, 142 L.Ed.2d 929 (1999). Therefore, we conclude that in the present case the trial court had

**10.** Because Utah Rule of Civil Procedure 15(a) is substantially similar to Federal Rule of Civil Procedure 15(a), it is appropriate for this court to consider federal "authorities under the federal rules." *Heritage Bank & Trust v. Landon,* 770 P.2d 1009, 1010 n. 2 (Utah Ct.App.1989). *Compare* Utah R. Civ. P. 15(a), *with* Fed.R.Civ.P. 15(a).

**11.** The Ninth Circuit allows an amendment as a matter of course even after dismissal of the complaint. *See* 3 James Wm. Moore et al., *Moore's*

*Federal Practice* § 15.12[1] (3d ed.2005). The Seventh Circuit also allows a party to amend as a matter of course after dismissal unless the court enters a final judgment. *See id.* "Other circuits, however, take the position that a plaintiff's right to amend as of course terminates on dismissal of the complaint, and a plaintiff must move for leave to amend." *Id.* & n. 5 (citing First, Second, Fifth, Eighth, Tenth, and Eleventh Circuit courts).

the discretion to deny Plaintiff's Motion to Amend as to Defendant Ritchie/Quitiquit.

¶ 31 Because we determine the trial court had the authority to exercise its discretion in denying Plaintiff's Motion to Amend as to both Defendant Clark and Defendant Ritchie/Quitiquit, we now consider whether the trial court in fact abused that discretion. When considering whether a trial court abused its discretion in granting or denying a motion to amend, this court examines three factors: " '(1) the timeliness of the motion; (2) the justification for delay; and (3) any resulting prejudice to the responding party.' " *Tretheway v. Furstenau*, 2001 UT App 400, ¶ 16, 40 P.3d 649 (quoting *Atcitty v. Board of Educ.*, 967 P.2d 1261, 1264 (Utah Ct.App.1998)). However, "courts should not regard the[ ] three factors [of timeliness, motivation, and prejudice] as an exclusive list." *Kelly v. Hard Money Funding, Inc.*, 2004 UT App 44, ¶ 39, 87 P.3d 734. "[T]he motion to amend analysis is instead a multi-factored, flexible inquiry that allows trial courts the leeway to evaluate the factual circumstances and legal developments involved in each particular case." *Id.* at ¶ 41, 87 P.3d 734. Further, "the circumstances of a particular case may be such that a court's ruling on a motion to amend can be predicated on only one or two of the particular factors." *Id.* at ¶ 42, 87 P.3d 734.

¶ 32 In denying Plaintiff's Motion to Amend, the trial court determined that "Plaintiff ha[d] failed to demonstrate any valid reason for the considerable delay since the filing of the original complaint" and thus, had "failed to exercise reasonable diligence in bringing claims it had knowledge of or should have had knowledge of long before the filing of the Motion to Amend." Further, the trial court concluded, "[t]he best interests of trial management and conservation of judicial resources are served by not having moving target claims, particularly when there is no justification for the delay."

¶ 33 We conclude the trial court did not abuse its discretion in ruling that Plaintiff's Motion to Amend was untimely and unjustified. In *Neztsosie v. Meyer*, 883 P.2d 920 (Utah 1994), the plaintiffs filed a motion for leave to amend approximately three years after they filed their original complaint and two and a half years after they filed their first amended complaint. *See id.* at 922. The trial court denied the plaintiffs' motion for leave to amend to file a second amended complaint. *See id.* The Utah Supreme Court concluded that the trial court did not abuse its discretion in denying the plaintiffs' motion for leave to amend to file a second amended complaint "[i]n light of the three years th[e] case was pending and the fact that plaintiffs knew or should have known of [the claim at issue] when the amended complaint was filed." *Id.; see also Atcitty*, 967 P.2d at 1264–65 (holding that the trial court did not abuse its discretion in denying plaintiff's motion for leave to amend where the motion was untimely, plaintiff had "attempted to set forth new issues in his amended complaint," and plaintiff had been "aware of the 'new issues' raised in the amended complaint long before [the] motion was filed" and provided "no justifiable reason for the delay").

¶ 34 With regard to the justification prong, this court has held that although "the extent to which the moving party had prior knowledge of the proposed amendment should be a relevant factor in the court's analysis," the court should primarily focus "on the reasons offered by the moving party for not including the facts or allegations in the original complaint." *Kelly*, 2004 UT App 44 at ¶ 38, 87 P.3d 734. Examples of inadequate reasons may include "dilatory motive, a bad faith effort during the pleading process, or unreasonable neglect in terms of pleading preparation." *Id.*

¶ 35 In the present case, Plaintiff filed his complaint in July 2000, and, like the plaintiff in *Neztsosie*, it was almost three years later before he filed his Motion to Amend. *See* 883 P.2d at 922. Additionally, similar to the plaintiff in *Neztsosie*, Plaintiff "knew or should have known" prior to April 2003 about the additional parties and claims he sought to include. *Id.* Given Plaintiff's lengthy delay in filing his Motion to Amend and that the reasons Plaintiff set forth in support of the delay indicate that Plaintiff's late inclusion of the additional parties and claims was nothing more than the result of his own negligence-

thus indicating that Plaintiff "should have known of the [claims and parties] when the [original] complaint was filed"-we hold the trial court's determination that Plaintiff's Motion to Amend was untimely and unjustified did not "exceed[ ] the limits of reasonability." *Id.* (quotations and citation omitted). Therefore, we conclude the trial court did not abuse its discretion in denying Plaintiff's Motion to Amend.

## II. Motion to Dismiss for Failure to Join an Indispensable Party

¶ 36 Plaintiff argues that the trial court abused its discretion in determining that the Estate of Mr. Clark was an indispensable party to Plaintiff's action. Utah Rule of Civil Procedure 19 governs the joinder of parties necessary for "just adjudication." Utah R. Civ. P. 19. Under rule 19, a court must engage in a two-part inquiry. *See Seftel v. Capital City Bank,* 767 P.2d 941, 945 (Utah Ct.App.1989). First, the court must ascertain whether a party "has sufficient interest in the action to make it a necessary party." *Id.* (quotations and citations omitted). Assuming the party's joinder will not deprive the court of its subject matter jurisdiction, a party is necessary to an action if:

(1) in [the party's] absence complete relief cannot be accorded among those already parties, or (2) [the party] claims an interest relating to the subject of the action and is so situated that the disposition of the action in [the party's] absence may (i) as a practical matter impair or impede [the party's] ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of [the party's] claimed interest.

Utah R. Civ. P. 19(a)(1)-(2).

¶ 37 Second, if the court indeed deems the party necessary to the action, and joinder is unfeasible, the court must then determine whether the party is indispensable. *See Seftel,* 767 P.2d at 945; *see also Johnson v. Higley,* 1999 UT App 278, ¶ 29, 989 P.2d 61 ("Only if the party is necessary, but the court finds joinder unfeasible, must the court address indispensability under [r]ule 19(b)."). That is, the court must ultimately decide "whether in equity and good conscience the action should proceed." *Seftel,* 767 P.2d at 945 (quotations and citation omitted); *see also* Utah R. Civ. P. 19(b). In making this determination, the court considers four factors:

(1) to what extent a judgment rendered in the [party's] absence will prejudice [the party] or those already parties; (2) the likelihood of reducing or avoiding prejudice by protective measures or provisions in the judgment; (3) the adequacy of the judgment which might be entered in the [party's] absence; and (4) the adequacy of the plaintiff's remedy if the action is dismissed for nonjoinder.

*Seftel,* 767 P.2d at 945 (citing Utah R. Civ. P. 19(b)). If the court concludes the absent party is indispensable, the court should dismiss the action. *See* Utah R. Civ. P. 19(b).

¶ 38 We first address whether the trial court appropriately deemed the Estate of Mr. Clark a necessary party under rule 19. *See* Utah R. Civ. P. 19. In considering whether a party is necessary, the trial court must "identify the specific facts and reasoning that support its conclusion that a party is or is not necessary under [r]ule 19(a)." *Werner–Jacobsen v. Bednarik,* 946 P.2d 744, 747 (Utah Ct.App.1997). "However, 'if, upon a review of the record, there is clear evidence to support the trial court's ultimate conclusion,' these failures are harmless error, and the trial court's ruling may be affirmed." *Id.* (quoting *Seftel,* 767 P.2d at 945).

¶ 39 Here, the trial court concluded that "based upon the facts and authorities cited by [D]efendants in their various memoranda," the Estate of Mr. Clark was a necessary party to the action

because, given the nature of [P]laintiff's claims of alter ego and the alleged pivotal representative role Mr. Clark occupied in the transactions at issue, in the absence of his estate as a party complete relief cannot be accorded to those already parties to this action. In addition, the Estate of Mr. Clark is potentially liable to the other parties to this action such that the absence of

the estate as a party exposes the other parties to substantial risk of incurring multiple obligations without recourse to the estate.

Plaintiff contends the trial court's explanation for its determination that the Estate of Mr. Clark was a necessary party did not sufficiently specify the facts and reasoning in support of its decision. *See id.* Although perhaps briefer than an appellate court desires, we disagree with Plaintiff that the trial court's stated justification constituted prima facie error. *See Higley,* 1999 UT App 278 at ¶ 30, 989 P.2d 61.

¶ 40 Further, our own review of the record supports the trial court's conclusion that "in [the Estate of Mr. Clark's] absence[,] complete relief cannot be accorded among those already parties" to Plaintiff's action. Utah R. Civ. P. 19(a). Here, Plaintiff's claims specifically named or included Mr. Clark in his individual capacity. *Cf. Mallalieu–Golder Ins. Agency v. Executive Risk Indem.,* 254 F.Supp.2d 521, 525 (M.D.Pa.2003) ("Because [plaintiff] makes no claims against [the unjoined party,] it is clear [under Federal Rule of Civil Procedure 19(a) ] that complete relief can be granted in its absence.").[12] Plaintiff's reason for naming and including Mr. Clark is apparent where the record reveals that it was primarily, if not solely, the actions of Mr. Clark in his individual capacity that led to Plaintiff's alleged damages. *See Freeman v. Northwest Acceptance Corp.,* 754 F.2d 553, 559 (5th Cir.1985) (determining that unjoined subsidiary was a necessary party under Federal Rule of Civil Procedure 19(a) to action against parent company where subsidiary "was more than an active participant in the [wrong] alleged by [the plaintiffs]; it was the primary participant"); *see also Acton Co. v. Bachman Foods, Inc.,* 668 F.2d 76, 78 (1st Cir.1982) (deciding that parent company was a necessary party to plaintiff's action against subsidiary where complete relief could not be afforded to defendants without joinder because parent company played a "substantial role" in negotiating agreements that were subject of plaintiff's suit); *Cf. Higley,* 1999

UT App 278 at ¶ 33, 989 P.2d 61 (rejecting defendants' motion to join fellow owners of uncapped wells that had flooded plaintiffs' land and led to plaintiffs' suit for compensatory damages, and concluding these owners were not necessary parties under rule 19(a) because the "[plaintiffs'] claims were expressly limited to [the defendants'] acts or omissions"). Thus, in accordance with the interest of "fairness to the parties in [the] litigation," we uphold the trial court's determination that the Estate of Mr. Clark was a necessary party to Plaintiff's action. *Kemp v. Murray,* 680 P.2d 758, 760 (Utah 1984) (holding rule 19(a) seeks to protect the interest of fairness to the parties as well as the interest of judicial economy).

¶ 41 Having agreed with the trial court that the Estate of Mr. Clark was a necessary party to Plaintiff's action, we next consider whether joinder was unfeasible and the estate indispensable to the action. *See Johnson v. Higley,* 1999 UT App 278, ¶ 29, 989 P.2d 61. Here, the trial court stated that "joinder of the [E]state [of Mr. Clark wa]s not feasible because the estate [w]as closed and the limitation period for asserting claims against the estate ran on May 25, 2003." Further, the trial court explained,

> because the presence of the estate [wa]s required for a full and fair determination of the rights and obligations of those already parties to the action, and in equity and good conscience and particularly because of the opportunities afforded [P]laintiff to join the estate which were not utilized, the action should not proceed among the parties before it.

We agree that joinder of the Estate of Mr. Clark was unfeasible at the time of the trial court's May 11, 2004 ruling. Plaintiff could no longer sue the estate under Utah's probate laws because Mr. Clark had died on May 2, 2002, and the notice to creditors was first published on February 25, 2003. *See* Utah Code Ann. § 75–3–803(1)(a)–(b) (1993) (prohibiting all claims arising prior to decedent's death unless brought within the earli-

---

12. Utah Rule of Civil Procedure 19 is "substantially identical" to Federal Rule of Civil Procedure 19. Utah R. Civ. P. 19, Compiler's Notes. It is therefore proper for this court to "look to authorities under the federal rules." *Heritage Bank & Trust v. Landon,* 770 P.2d 1009, 1010 n. 2 (Utah Ct.App.1989).

er of two dates: one year after decedent's death or ninety days from notice publication date).

¶ 42 We further concur that because Plaintiff named or included Mr. Clark in his claims as the major, if not the sole, actor responsible for Plaintiff's alleged damages, "a judgment rendered in [the Estate of Mr. Clark's] absence w[ould] prejudice ... those already parties" to the action; protective judgment provisions would not ameliorate this prejudice; a judgment entered in the Estate of Mr. Clark's absence would be less than adequate; and, most importantly, as a result of the foregoing factors, the nonjoinder of the Estate of Mr. Clark would violate principles of "equity and good conscience." Utah R. Civ. P. 19(b). Thus, we conclude the trial court did not abuse its discretion in determining the Estate of Mr. Clark was indispensable to Plaintiff's action.

### III. Award of Attorney Fees and Costs

¶ 43 Plaintiff maintains the trial court abused its discretion in awarding Defendant Ritchie/Quitiquit's Motion for Attorney Fees and Costs. In response, Defendant Ritchie/Quitiquit contends that because Plaintiff paid the attorney fees and costs, he waived his right to appeal the award. We agree.

¶ 44 Utah courts have long held that " 'if a judgment is voluntarily paid, which is accepted, and a judgment satisfied, the controversy has become moot and the right to appeal is waived.' " *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1316 (Utah Ct.App.1991) (quoting *Jacobsen, Morrin & Robbins Constr. Co. v. St. Joseph High Sch. Bd. of Fin. Trs.*, 794 P.2d 505, 506 (Utah Ct.App.1990)); *Jensen v. Eddy*, 30 Utah 2d 154, 514 P.2d 1142, 1143 (1973); *see also Trees v. Lewis*, 738 P.2d 612, 613 (Utah 1987) (quoting *Ottenheimer v. Mountain States Supply Co.*, 56 Utah 190, 188 P. 1117, 1118 (1920), for the proposition that where "a party to an action accepts the benefits of a judgment in his favor or acquiesces in a judgment against him he thereby waives his right to have said judgment reviewed on appeal," and explaining that in *Ottenheimer* the defendant waived his right to appeal where he acquiesced in the judgment by relinquishing possession of the disputed land, despite defendant's letter to the plaintiff "explaining that he did not intend to waive his right to appeal by moving off the land").

¶ 45 In its December 2004 findings of fact and conclusions of law, the trial court determined that attorney fees and costs should be entered in favor of Ritchie and the remaining Defendant Ritchie/Quitiquit members. However, prior to the trial court's entry of judgment in February 2005, Plaintiff paid Defendant Ritchie/Quitiquit its awarded fees and costs. Defendant Ritchie/Quitiquit entered a notice of satisfaction of judgment on May 2, 2005. We conclude that in paying Defendant Ritchie/Quitiquit's attorney fees and costs, Plaintiff effectively renounced his right to subsequently appeal the trial court's award of these fees and costs. *See Majestic,* 818 P.2d at 1316; *see also Barringer v. Hall,* 89 Ark.App. 293, 305, 202 S.W.3d 568 (2005) (holding appellants' appeal of attorney fees was moot because the record revealed that appellants paid the fees).

### CONCLUSION

¶ 46 In summary, we conclude the trial court did not abuse its discretion in denying Plaintiff's Motion to Amend and in granting Defendants' Motion to Dismiss for Failure to Join an Indispensable Party. We also determine that Plaintiff waived his right to appeal the trial court's award of attorney fees and costs to Defendant Ritchie/Quitiquit. Accordingly, we affirm.

¶ 47 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and CAROLYN B. McHUGH, Judge.