# IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Leslie D. Mower; LD SQ, LLC; LD III, LLC; LD Purpose, LLC; and Navona, LC, | ) ) ) ) | OPINION |
| | ) | Case No. 20100532-CA |
| Plaintiffs and Appellants, | ) ) | |
| | ) | F I L E D |
| v. | ) | (May 17, 2012) |
| | ) | |
| David R. Simpson; Nathan R. Simpson; | ) | 2012 UT App 149 |
| Michael K. Thompson; Todd Dorny; | ) | |
| Brandon Dente; David N. Nemelka; | ) | |
| Dallas M. Hakes; Chad D. Carlson; | ) | |
| Michael A. Marx; Allen R. Hakes; | ) | |
| Michael W. Aviano; ALS Properties, | ) | |
| LLC; Mai Ke Kula, LLC; Hanalei Kai | ) | |
| Holdings, LLC; Ka Mahina, LLC; He | ) | |
| Kiakolu, LLC; Koamalu Plantation, LLC; | ) | |
| Landmark Real Estate, Inc.; Wood | ) | |
| Springs, LLC; Oak Leaf, LLC; Dente, | ) | |
| LLC; Sunny Ridge, LLC; KNDJ | ) | |
| Development, LLC; DN Simpson | ) | |
| Holdings, LLC; SOS Mapleton | ) | |
| Development, LLC; DN Simpson | ) | |
| Mapleton Holdings, LLC; The Preserve | ) | |
| at Mapleton Development Company, | ) | |
| LLC; Pheasant Meadows, LLC; | ) | |
| Carnesecca Orchard Estates, LLC; | ) | |
| Spanish Vista Plat I, LLC; Landmark | ) | |
| Homes of Utah, LLC; Maple Mountain | ) | |
| Water Tank, LLC; Lonestar Gutters, | ) | |
| LLC; 2 Brothers Communications; and | ) | |
| Lonestar Builders, Inc., | ) | |
| | ) | |
| Defendants and Appellees. | ) | |

-----

Fourth District, Provo Department, 090403844
The Honorable Samuel D. McVey

Attorneys:     Bart J. Bailey and William T. Jennings, Orem; and Denver C. Snuffer Jr.,
               Sandy, for Appellants
               Caleb J. Frischknecht, Salt Lake City; Craig Carlile; Provo; and Mark D.
               Eddy and Morgan L. Cummings, Pleasant Grove, for Appellees

-----

Before Judges Orme, Thorne, and Roth.

THORNE, Judge:

¶1     Leslie D. Mower; LD SQ, LLC; LD III, LLC; LD Purpose, LLC; and Navona, LC
(collectively, Plaintiffs) bring this interlocutory appeal challenging the district court's
dismissal of several of their numerous causes of action against David R. Simpson and
his codefendants (collectively, Defendants).  Specifically, Plaintiffs argue that the district
court erred in dismissing their fraud and fraud-based claims for failure to plead them
with particularity; erred in dismissing their fraud claims after determining that
Mower's deceased husband, Ken Dolezsar, was a necessary and indispensable party to
those claims; and erred in dismissing their claims alleging aiding and abetting a breach
of fiduciary duty on the ground that Utah law does not recognize such a cause of action.
We reverse the district court and remand this matter for further proceedings consistent
with this opinion.


BACKGROUND

¶2     Plaintiffs filed their initial Complaint in this matter on October 20, 2009.  The
Complaint was 212 pages long, asserted twenty-six claims against multiple defendants
in 701 numbered paragraphs, and was supported by 183 exhibits comprising an
additional 1100-some pages of material.  Many of the paragraphs in the individual
causes of action referred to specific earlier paragraphs in the factual section of the

Complaint.[1] The Complaint alleged fraud and other claims arising out of the development and funding of various real estate projects in Hawaii and Utah. In November 2009, after several defendants had filed motions to dismiss, Plaintiffs filed a First Amended Complaint spanning 216 pages and asserting twenty-eight claims in 713 numbered paragraphs. The First Amended Complaint prompted several more motions to dismiss.

¶3    On January 22, 2010, the district court dismissed Plaintiffs' fraud claims for failure to plead them with particularity. In regard to the fraud claims, the district court stated,

> [T]hey do not contain the required level of particularity—who in particular said or represented what to whom in particular, when, where, and how such representations occurred, the specific terminology used, why reliance was reasonable and what particular damages were caused by each discrete action. Defendants are entitled to know the precise events on which plaintiffs rely without having to infer what happened through assembling pieces of a puzzle contained throughout a voluminous complaint.

The district court then granted Plaintiffs twenty days in which to plead their fraud claims "concisely and with particularity." On March 5, 2010, Plaintiffs filed a 361-page Second Amended Complaint asserting forty-eight claims over 1362 numbered paragraphs and continuing Plaintiffs' previous convention of stating claims by reference to prior paragraphs. The Second Amended Complaint resulted in yet another wave of motions to dismiss.

¶4    In June 2010, the district court issued two written rulings on the various motions to dismiss. The effects of these two rulings included the dismissal of Plaintiffs' fraud

---

[1]For example, in the Complaint's first fraud claim, Plaintiffs alleged in paragraph 541 that certain defendants had made intentional false "promises and representations, as described in paragraphs 83, 256, 314, 315, 316, 357, 434 and elsewhere in this Complaint."

and fraud-based claims for failure to plead them concisely and with particularity. The district court explained,

> Despite Plaintiffs' addition of 145 more pages, the Second Amended Complaint still does not provide the particularity mandated by Rule 9(b). Instead, Plaintiffs' "much too long and involved" Second Amended Complaint merely "dumps upon the [Court] . . . the burden of sifting through the hundreds of paragraphs of alleged facts to ascertain whether Plaintiffs have allege[d] . . . , the facts necessary to make all their elements of fraud."

(Alterations and omissions in original.) (Quoting *Coroles v. Sabey*, 2003 UT App 339, ¶¶ 23, 27, 79 P.3d 974.) The district court also dismissed Plaintiffs' fraud claims pursuant to rule 19 of the Utah Rules of Civil Procedure, ruling that Mower's deceased husband was a necessary and indispensable party to those claims. Finally, the district court dismissed Plaintiffs' claims for aiding and abetting a breach of fiduciary duty and aiding and abetting fraudulent nondisclosure, reasoning that Utah law does not recognize these causes of action. Plaintiffs sought and received permission to bring this interlocutory appeal from the district court's dismissal orders.

## ISSUES AND STANDARDS OF REVIEW

¶5 Plaintiffs first argue that the district court erred when it dismissed their fraud and fraud-based claims for failure to plead them with particularity. "'Because the propriety of a motion to dismiss is a question of law, we review for correctness, giving no deference to the decision of the trial court.'" *Coroles v. Sabey*, 2003 UT App 339, ¶ 15, 79 P.3d 974 (quoting *Krouse v. Bower*, 2001 UT 28, ¶ 2, 20 P.3d 895).

¶6 Next, Plaintiffs argue that the district court erred when it dismissed their fraud claims based on its determination that Mower's deceased husband was a necessary and indispensable party to those claims. "[A] trial court's determination properly entered under Rule 19[, which governs the joinder of indispensable parties,] will not be disturbed absent an abuse of discretion." *Werner-Jacobsen v. Bednarik*, 946 P.2d 744, 746 (Utah Ct. App. 1997) (first alteration in original) (internal quotation marks omitted).

¶7 Finally, Plaintiffs argue that Utah law recognizes causes of action for aiding and abetting the breach of a fiduciary duty and aiding and abetting fraudulent nondisclosure. Whether a cause of action is recognized in Utah is a question of law, and we therefore review the district court's ruling on this issue for correctness. *See Jacob v. Bezzant*, 2009 UT 37, ¶ 18, 212 P.3d 535 ("We review these rulings under a correctness standard because whether a particular array of allegations set[s] out a cognizable cause of action is purely a question of law.").

ANALYSIS

I. Adequacy of Pleading of Fraud Claims

¶8 Plaintiffs argue that the district court erred in dismissing their fraud and fraud-based claims for failure to plead them with particularity. Reading the district court's January 2010 and June 2010 rulings together, we can ascertain three grounds for the district court's ultimate dismissal of Plaintiffs' fraud and fraud-based claims: (1) Plaintiffs failed to state their claims with the required level of particularity; (2) notwithstanding this lack of particularity, Plaintiffs' Second Amended Complaint was too long and involved; and (3) Plaintiffs employed internal cross-referencing of paragraphs in the Second Amended Complaint rather than repeating every factual allegation in every claim. We conclude that the district court's dismissal of Plaintiffs' fraud and fraud-based claims on these grounds constitutes error.

A. The Second Amended Complaint's Length and Complexity

¶9 We first address the district court's concerns about the length and complexity of the Second Amended Complaint, as well as Plaintiff's cross-referencing of paragraphs within the Second Amended Complaint. In finding fault with Plaintiffs on these grounds, the district court appears to have relied primarily on *Coroles v. Sabey*, 2003 UT App 339, 79 P.3d 974. *Coroles* states that rule 9(b) of the Utah Rules of Civil Procedure imposes a "basic and fundamental requirement" of "clarity and conciseness." *See id.* ¶ 23; *see also* Utah R. Civ. P. 9(b). The reasons for this requirement are to ensure

> "that the essential facts upon which redress is sought be set forth with simplicity, brevity, clarity and certainty so that it can be determined whether there exists a legal basis for the

> relief claimed; and, if so, so that there will be a clearly
> defined foundation upon which further proceedings by way
> of responsive pleadings and/or trial can go forward in an
> orderly manner."

*Coroles*, 2003 UT App 339, ¶ 23 (quoting *Heathman v. Hatch*, 13 Utah 2d 266, 372 P.2d 990, 992 (1962)).

¶10    *Coroles* also determined that the particulars necessary to plead a claim of fraud may not generally be supplied merely by incorporating all preceding factual allegations into a fraud claim. *See id.* ¶¶ 25–27. In *Coroles*, the plaintiffs attempted to plead a common law fraud claim with no specific factual allegations besides the bare incorporation of 660 preceding paragraphs. *See id.* ¶ 25. In light of the burdens that this method of pleading placed on the district court, we rejected it as "unacceptable." *See id.* ¶ 27.

¶11    In the present case, despite the substantial length and complexity of the Second Amended Complaint, we are not convinced that it is automatically too long or involved in light of the number and complexity of Plaintiffs' claims. *Coroles* recognized that "[w]hether a complaint is 'much too long and involved' is . . . dependent upon the complexity of each individual case." *Id.* ¶ 23 n.11. Here, as described in Plaintiffs' appellate brief, the Second Amended Complaint "detail[s] five major theaters of activity where fraudulent acts occurred, [and names] thirty-five primary defendants, involved in various fraudulent acts described in twenty-one causes of action relating to fraudulent activity."

¶12    Assuming that all such claims and defendants are properly joined together in this single action—a question that is not before us in this interlocutory appeal—it is to be expected that the Second Amended Complaint would be much longer and more involved than the typical civil complaint. The legal question before us is whether it is *too* long as a matter of law in light of the number and complexity of Plaintiffs' claims. We determine that it is not. *Coroles* makes clear that there is no per se rule as to the maximum length of pleadings. *See* 2003 UT App 339, ¶ 23 n.11 ("[W]e do not mean to imply that all complaints consisting of thirty-three or more pages are necessarily 'much too long and involved,' nor do we believe that the Utah Supreme Court intended to create such a per se rule . . . ." (citation omitted)). Here, Plaintiffs allege an amazingly complex series of frauds against numerous defendants. In light of the number and

complexity of Plaintiffs' claims, we cannot say as a matter of law that the Second Amended Complaint is too long or involved.[2] *See id.*

¶13 Our holding that the Second Amended Complaint is not too long as a *legal* matter should not be confused with a determination that it is not too long as a *practical* matter. Pleadings of such enormous length place great burdens on the courts and defendants alike. We emphasize that our holding that the Second Amended Complaint is not so long as to justify its dismissal is not intended in any way to limit the district court's considerable discretion to manage its own docket and caseload. *See, e.g.*, *Welsh v. Hospital Corp. of Utah*, 2010 UT App 171, ¶ 9, 235 P.3d 791 ("Trial courts have broad discretion in managing the cases assigned to their courts." (internal quotation marks omitted)). To that end, we note that the district court retains the authority and discretion to take reasonable steps to make this case more manageable for everyone involved. Such steps could include requiring Plaintiffs to shorten their complaint, so long as they are allowed to plead their claims with the required degree of particularity.

¶14 As to Plaintiffs' use of internal cross-referencing, the pleading methods employed in the Second Amended Complaint are readily distinguishable from the technique that the *Coroles* court deemed to be unacceptable. In *Coroles*, this court described the plaintiffs' fraud pleading as follows:

> The section of the complaint that is devoted to common law fraud consists of eleven paragraphs. The first of these paragraphs, paragraph 661 of the complaint, simply reads: "The foregoing paragraphs numbered 1–660 are incorporated into this Count." The remaining ten paragraphs of this section merely recite the elements of

---

[2]We stress that Plaintiffs allege an extraordinarily complex series of frauds in this case and that pleadings of such enormous length—or even a fraction thereof—are appropriate in only the rarest of cases. Dismissal of overlength complaints remains a completely appropriate option when a carefully reasoned analysis demonstrates that a particular complaint, or portion thereof, is indeed "much too long and involved" under the circumstances. *See Coroles v. Sabey*, 2003 UT App 339, ¶ 23 n.11, 79 P.3d 974 (internal quotation marks omitted).

> fraud and allege that [the d]efendants committed each
> element.

*Coroles v. Sabey*, 2003 UT App 339, ¶ 25, 79 P.3d 974. The court determined that the bulk citation to all preceding paragraphs was an "unacceptable" approach to meeting the pleading requirements, "especially in a complaint of such enormous length," as it "essentially dumps upon the trial court, and now upon this court, the burden of sifting through the hundreds of paragraphs of alleged facts" to determine whether a claim has been adequately pleaded. *See id.* ¶¶ 26–27.

¶15 By contrast, the Second Amended Complaint does not rely exclusively on the bulk incorporation of preceding paragraphs to make its claims but rather links those claims to specific, identifiable facts. Per longstanding practice, each of Plaintiffs' claims does begin with a paragraph incorporating all prior paragraphs. *See generally id.* ¶ 27 n.13 (acknowledging that "it is very routine for plaintiffs to incorporate preceding paragraphs into the various counts of their complaints"). However, Plaintiffs have gone much further by way of identifying the factual allegations in support of each of their claims. A typical supporting paragraph from one of Plaintiffs' fraud claims contains both a summary of the factual allegation contained therein and a citation to one or more specific prior paragraphs containing the underlying facts in greater detail.[3]

¶16 This specific cross-referencing of relevant paragraphs does not violate the pleading principle set forth in *Coroles*, which seems to have expressly foreseen and approved such a method of pleading. *See id.* As explained in *Coroles*,

> due to the enormous length and lack of conciseness in [the
> plaintiffs'] description of the facts of this case, it was
> incumbent upon [the plaintiffs] to do more than simply refer
> the trial court to all 660 of the paragraphs preceding the
> discussion of their common law fraud claim. At a minimum,

---

[3]For example, in paragraph 539 of the Second Amended Complaint, in support of Plaintiffs' first cause of action for fraud, Plaintiffs state, "As described in paragraph 74 herein, Michael Thompson told Todd Dorny about the scheme and recruited Dorny to participate, on the condition that Dorny would find a wealthy investor to fund the multiple conveyances of the real property[.]"

they should have listed *specific paragraphs* from their facts
section that supported each element of their common law
fraud claim.

*Id.* (emphasis added). Further, contrary to the district court's reasoning in the present case, *Coroles* indicated that the cross-referencing of specific paragraphs does not place any undue burden on the reviewing court,[4] particularly where the cross-referenced factual allegations are also summarized. *See id.* ("By [cross-referencing specific paragraphs, the plaintiffs] would have *spared* the courts the burden, identified in the text above, of sifting through the hundreds of paragraphs of the complaint to verify that they alleged facts supporting each element of their claim." (emphasis added)). Plaintiffs went considerably further than the minimum required by *Coroles*, as they not only listed "specific paragraphs from their facts section that supported each element of their common law fraud claim," *id.*, but also accompanied each cross-reference with a short, clear summary of what would be found there.

¶17   We acknowledge the unusual length and complexity of the Second Amended Complaint, and we reiterate *Coroles*'s sage advice warning against "equating 'particularity' with unnecessary detail, if not minutia." *See id.* ¶ 23 n.11. But we also recognize the tension between the competing requirements of pleading fraud "'with particularity'" and doing so with "clarity and conciseness," *see id.* ¶¶ 21–23. This tension is aggravated in this case by the large number of claims and defendants and the breadth of the factual allegations underlying those claims.[5] In light of *Coroles*'s approval

---

[4]And, of course, Plaintiffs are correct when they argue that avoiding cross-referencing by repeating every factual allegation in every claim would create yet another problem—much greater overall length of a document that already exceeds 360 pages.

[5]We observe that the district court imposed conflicting obligations on Plaintiffs when it dismissed the fraud claims contained in their First Amended Complaint. In regard to those claims, the district court stated that the already voluminous First Amended Complaint was nevertheless insufficiently particular and failed to inform Defendants "who in particular said or represented what to whom in particular, when, where, and how such representations occurred, the specific terminology used, why reliance was reasonable and what particular damages were caused by each discrete

of specific internal cross-referencing, the number and complexity of Plaintiffs' claims, and our conclusion that the Second Amended Complaint is not as a matter of law "much too long and involved" under the circumstances, we determine that the district court erred in relying on the raw length of the Second Amended Complaint and Plaintiffs' use of specific cross-referencing as grounds to dismiss Plaintiffs' fraud and fraud-based claims. However, as to measures short of dismissal, we reaffirm the district court's discretion to manage its docket and ensure that the cases before it are litigated with efficiency and in such a manner as to not place undue burdens on parties or the courts.

B. The Second Amended Complaint's Particularity

¶18    Having determined that Plaintiffs' use of specific cross-referencing is an acceptable pleading method, we turn to the question of whether Plaintiffs' fraud and fraud-based claims are stated with sufficient particularity when Plaintiffs' cross-referenced paragraphs are properly considered in support of those claims. The adequacy of a complaint presents a question of law that we review for correctness, giving the district court's decision no deference. *See Sullivan v. Sullivan*, 2004 UT App 485, ¶ 5, 105 P.3d 963 ("Review of a grant of a motion to dismiss presents questions of law that we review for correctness, giving no deference to the decision of the [district] court." (internal quotation marks omitted)). Thus, we would ordinarily conduct our own review of Plaintiffs' claims for adequate particularity.

¶19    However, due to its incorrect cross-reference ruling, the district court never fully analyzed the particularity of Plaintiffs' fraud claims on a claim-by-claim basis. Nor have the parties provided us with such a claim-by-claim analysis in their briefing on appeal. Moreover, this appeal is before us on an interlocutory basis and the case is subject to further development on remand. In light of these considerations, we decline to undertake a claim-by-claim analysis of the fraud and fraud-based claims contained in the Second Amended Complaint. Rather, we leave that task in the first instance to the district court, with the assistance of the parties, on remand.

---

[5](...continued)
action."

¶20 Nevertheless, even a cursory review of those claims suggests that many, if not all, of them have been adequately pleaded. To "bring a claim sounding in fraud," a party must allege the following elements:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35 (internal quotation marks omitted). As stated above, we decline to analyze each of Plaintiffs' fraud claims against this pleading standard. However, we will analyze one of Plaintiffs' claims as an example and illustration of the pleading standard at issue in this case.

¶21 Plaintiffs' first fraud claim is their very first cause of action, commencing at paragraph 537 on page 178 of the Second Amended Complaint. This cause of action alleges fraud and intentional misrepresentation against five individuals—David Simpson, Nathan Simpson, Michael Thompson, Todd Dorny, and Brandon Dente—and multiple business entities associated with them. According to Plaintiffs' allegations, Thompson devised a plan to skim funds from a wealthy investor in a fraudulent real property development scheme. The scheme involved multiple conveyances of the real property and the taking of management and consulting fees by Thompson and others. Thompson recruited Dorny to locate a victim for the scheme, and to this end Dorny contacted Dente, who in turn contacted David Simpson. Thompson then communicated with both of the Simpsons, either directly or through Dorny and Dente, and instructed them to make certain representations to Ken Dolezsar, who Thompson and the Simpsons knew was Leslie Mower's agent.

¶22 Communicating through Dolezsar, Thompson and the Simpsons are alleged to have made the following statements of presently existing fact and intent to Mower, as described in paragraph 83 of the Second Amended Complaint:

a. That the Koamalu Plantation development project was a very unique and tremendously profitable real estate investment opportunity that required an immediate investment or the opportunity would be offered to another investor;

b. That the Koamalu Plantation development project involved 11 acres, near the beach, on the Island of Kauai in Hawaii;

c. That the project was zoned to allow construction of 20 condominium units per acre—or approximately 220 condominium units plus common area club houses, swimming pools, etc.;

d. That only $5,000,000.00 was needed to acquire the land and do the preliminary development work, because all construction costs would be totally funded with proceeds from condominium pre-sales;

e. That condominium pre-sales would start in four to six months;

f. That there was a huge demand for vacation housing in Kauai so the condominium units would sell quickly;

g. That the project would be completed and sold out in less than three years—probably in less than two years;

h. That the Koamalu Plantation development project included a seasoned contractor and developer [(Thompson)] and his partner/associate [(Dorny)] who had built and sold hundreds of condominiums in Kauai;

i. That [Mower] would get all of her $5,000,000.00 back, plus, a profit of $10,000,000.00 (200%) *on* her investment if she was willing to invest immediately; and,

j. That [Mower's] investment would be secure because she would own the real property until the condominium units were built and sold.

Plaintiffs then allege, in paragraph 545, that these representations were false in the following respects:

a. The Koamalu Plantation development project was not unique and as designed could never be profitable;

b. The Koamalu Plantation development project was not near the beach and would only have approximately 8 acres of real property left after the State of Hawaii took approximately 3 acres to widen the highway;

c. The construction costs could not be paid from pre-sales of condominium units because of the thirty percent (30%) affordable housing requirement imposed by Kauaii County;

d. More than $5,000,000.00 was needed to acquire the land and do the preliminary development work;

e. They could not get the needed permits and work performed to pre-sell condominiums within four to six months;

f. Any demand for vacation housing was not related to the condominiums because they were not designed, nor could they be sold, as vacation homes. Rather, they were homes for permanent residents of Kauai;

g. The project could not be completed and sold out in less than three years;

h. Michael Thompson and Todd Dorny had not built and sold hundreds of condominiums in Kauai;

i. It was impossible for [Mower] to get her $5,000,000.00 back plus a profit of $10,000,000.00 *on* her investment; and

j. Michael Thompson, David Simpson, Nathan Simpson, Todd Dorny and Brandon Dente never intended for [Mower] to own the real property.

Plaintiffs also allege the existence of an email, attributed to Thompson, that was communicated to Mower through Dorny, David Simpson, and Dolezsar. Plaintiffs identify several allegedly false statements in the email, similar to those listed above.

¶23 Plaintiffs further allege that Thompson and the others knew that these representations were false or made them recklessly, knowing that there was insufficient knowledge upon which to base such representations, and made the representations for the purpose of inducing Plaintiffs to invest in the scheme. Plaintiffs allege that they had no reason to know of the falsity of the representations and that they invested in

reasonable reliance on the representations. According to Plaintiffs, Thompson then funded multiple real property conveyances, identified in the Second Amended Complaint, with Plaintiffs' investment moneys. Thompson skimmed funds from these conveyances as management and consulting fees, resulting in a loss to Plaintiffs of $7,186,139.41. Plaintiffs also allege the intermingling of the named individual defendants' affairs with those of their respective business entities, so as to allege joint and several liability for the individuals and the business entities.

¶24 We determine that the totality of the allegations incorporated into Plaintiffs' first cause of action more than adequately pleads a claim for fraud. Plaintiffs describe a fraudulent development scheme, identify specific false representations of presently existing fact made to induce Plaintiffs to invest in that scheme, and state the resulting reliance of and losses to Plaintiffs. Plaintiffs also allege the various intents, purposes, and states of mind of both themselves and Defendants that are required to state a fraud claim. Read as a whole, Plaintiffs' first cause of action for fraud sets forth "[t]he relevant surrounding facts . . . with sufficient particularity to show what facts are claimed to constitute [the claim]," *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35 (internal quotation marks omitted).

¶25 Whether Defendants can ultimately establish one or more pleading defects in any of Plaintiffs' other claims is a question we leave to the district court on remand, and we do not intend this opinion to foreclose Defendants' opportunity to make such a showing. However, the dismissal of any particular claim should not occur without an analysis of the claim as a whole, including the supporting paragraphs specifically cross-referenced by Plaintiffs. We therefore reverse the district court's order of dismissal and remand the matter for consideration of Defendants' various motions to dismiss under the principles announced herein.

## II. Dolezsar as a Necessary and Indispensable Party

¶26 Plaintiffs next challenge the district court's dismissal of their fraud claims for failure to join Mower's deceased husband, Ken Dolezsar, as a party. The district court agreed with Defendants that Dolezsar was a necessary and indispensable party to those claims. Accordingly, the district court ruled that joinder of Dolezsar was mandatory

and that Plaintiffs' fraud claims could not proceed in the absence of Doleszar or his estate.[6]

¶27   The mandatory joinder of parties is governed by rule 19 of the Utah Rules of Civil Procedure.  *See* Utah R. Civ. P. 19.  "Under rule 19, a court must engage in a two-part inquiry."  *Turville v. J & J Props., LC*, 2006 UT App 305, ¶ 36, 145 P.3d 1146.  "First, the court must ascertain whether a party has sufficient interest in the action to make it a necessary party."  *Id.* (internal quotation marks omitted).  "Second, if the court indeed deems the party necessary to the action, and joinder is unfeasible, the court must then determine whether the party is indispensable."  *Id.* ¶ 37.  "The burden of presenting specific facts and reasoning that lead to the conclusion that a party is a necessary or indispensable party is on the party attempting to persuade the court that parties are necessary."  *Jennings Inv., LC v. Dixie Riding Club, Inc.*, 2009 UT App 119, ¶ 38, 208 P.3d 1077.

¶28   Both "necessary" and "indispensable" are further defined by multi-factor tests. A party is necessary to an action if the party's joinder will not deprive the court of its subject matter jurisdiction and

> "(1) in [the party's] absence complete relief cannot be accorded among those already parties, or (2) [the party] claims an interest relating to the subject of the action and is so situated that the disposition of the action in [the party's] absence may (i) as a practical matter impair or impede [the party's] ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of [the party's] claimed interest."

*Turville*, 2006 UT App 305, ¶ 36 (alterations in original) (quoting Utah R. Civ. P. 19(a)(1)–(2)).  The indispensability of a party is then determined by examining

> (1) to what extent a judgment rendered in the [party's] absence will prejudice [the party] or those already parties;

---

[6]By the time the district court issued its ruling, the statute of limitations for bringing a claim against Doleszar's estate had apparently expired.

(2) the likelihood of reducing or avoiding prejudice by protective measures or provisions in the judgment; (3) the adequacy of the judgment which might be entered in the [party's] absence; and (4) the adequacy of the plaintiff's remedy if the action is dismissed for nonjoinder.

*Id.* ¶ 37 (internal quotation marks omitted); *see also* Utah R. Civ. P. 19(b).

¶29    Here, the district court determined that Dolezsar was both necessary and indispensable. The district court deemed Dolezsar a necessary party because "the Second Amended Complaint alleges, at least in the alternative, [that] Dolezsar acted as more than a simple go-between. He occupied a pivotal representative role in the alleged fraud." The district court concluded that, in Dolezsar's absence, complete relief would not be available to the existing parties because of the inability to hold Dolezsar accountable and that, accordingly, Dolezsar was a necessary party to Plaintiffs' fraud claims. The district court concluded that Dolezsar was indispensable based on its findings that Defendants would be prejudiced by his absence; that this prejudice could be mitigated by dismissing Plaintiffs' fraud claims; that a judgment rendered in Dolezsar's absence would be inadequate because, among other reasons, Defendants could bring no cross-claims against Dolezsar's estate; and that Plaintiffs alleged several other claims against Defendants that "must suffice" to protect Plaintiffs' interests.

¶30    Both the district court and the parties appear to have made their analyses of Dolezsar's necessary and indispensable status based largely on a comparison between Dolezsar and the deceased defendant in *Turville v. J & J Properties, LC*, 2006 UT App 305, 145 P.3d 1146. *Turville* involved a piece of real property that was originally purchased by a limited liability company, Tri-J. *See id.* ¶ 2. John Clark, whose corporation CPI was a principal of Tri-J, was alleged to have improperly transferred most of the property to CPI rather than to Tri-J. *See id.* Then, acting individually, Clark sold the property, including fourteen acres that remained in Tri-J's name, to Turville without Tri-J's consent. *See id.* ¶ 4. Turville brought fraud and other claims against Tri-J and its principals, including CPI and Clark, but Clark died before the matter could be litigated. *See id.* ¶¶ 8–9. Once it became clear that Clark's estate would not be joined in the litigation, *see id.* ¶¶ 13–15, several of the remaining defendants sought to dismiss Turville's complaint on the ground that Clark or his estate was a necessary and indispensable party, *see id.* ¶ 17. The district court agreed and granted the motion to dismiss. *See id.* ¶ 19.

¶31    This court affirmed the district court's decision. *See id.* ¶¶ 36–42. In addition to the district court's rationale that Clark was a necessary party because of the plaintiff's "'claims of alter ego and the alleged pivotal representative role Mr. Clark occupied in the transactions at issue,'" *see id.* ¶ 39, this court reasoned that "it was primarily, if not solely, the actions of Mr. Clark in his individual capacity that led to [Turville's] alleged damages," *id.* ¶ 40, and that Turville "named or included Mr. Clark in his claims as the major, if not the sole, actor responsible," *id.* ¶ 42. In light of Clark's central and potentially exclusive role in Turville's claim for damages, this court held that the district court had not abused its discretion in determining that Turville's action could not proceed in Clark's absence. *See id.*

¶32    In the present case, the district court determined that Plaintiffs' Second Amended Complaint alleged, at least in the alternative, that Dolezsar occupied a "pivotal representational role in the alleged fraud." However, we are unable to discern such a role for Dolezsar under any portion of the Second Amended Complaint that has been brought to our attention. Plaintiffs cite to paragraphs in the Second Amended Complaint suggesting that their primary argument is that Defendants used Dolezsar as an unwitting conduit to relay fraudulent communications between themselves and Plaintiffs. Plaintiffs also cite to other paragraphs that identify their alternative argument—that it was unknown to them whether Dolezsar was innocently duped by Defendants or had some complicity with them. Neither the district court nor Defendants point us to any portion of the Second Amended Complaint alleging that Dolezsar was the "major, if not the sole, actor responsible" for Plaintiffs damages, such as would render him analogous to Mr. Clark in *Turville*. *See generally* 2006 UT App 305, ¶ 42.

¶33    Relying on the only portions of the voluminous Second Amended Complaint that have been identified as bearing on this issue, we determine that the district court exceeded its permitted discretion when it concluded that Plaintiffs' claims rendered Dolezsar a necessary and indispensable party. Under Plaintiffs' primary theory, Dolezsar is most accurately described as a fellow victim of Defendants' alleged fraud. However, even under a broad reading of Plaintiffs' alternative theory, Dolezsar might also become liable to Plaintiffs as a codefendant, but Defendants would remain the

primary bad actors with whom Dolezsar conspired.[7]  Neither theory renders Dolezsar the sole or major actor in Plaintiffs' fraud claims.  In light of the allegations contained in the Second Amended Complaint, we hold that Dolezsar's actions are meaningfully distinguishable from the actions of Mr. Clark in *Turville*, and we reverse the district court's ruling dismissing Plaintiffs' fraud claims for failure to join Dolezsar or his estate as a necessary and indispensable party.[8]

### III.  Claims for Aiding and Abetting Breach of Fiduciary Duty

¶34    Finally, Plaintiffs argue that the district court erred in concluding that Utah does not recognize causes of action for aiding and abetting the breach of a fiduciary duty and aiding and abetting fraudulent nondisclosure.  As to aiding and abetting the breach of a fiduciary duty, we agree with Plaintiffs that Utah law does recognize such a cause of action.  However, we decline to address the question of whether Utah recognizes the aiding and abetting of fraudulent nondisclosure because Plaintiffs have failed to adequately brief that argument.

¶35    The district court premised its dismissal of Plaintiffs' aiding and abetting breach of fiduciary duty claims on its conclusion that the Utah Supreme Court has yet to recognize such claims under Utah law.  In so doing, the district court correctly observed that this court, on at least one occasion, declined to address the issue of whether Utah recognizes these types of claims.  *See Coroles v. Sabey*, 2003 UT App 339, ¶ 34 n.19, 79 P.3d 974.  However, we conclude that claims for aiding and abetting the breach of a fiduciary duty have been recognized, at least implicitly, in other cases from both the supreme court and this court.

---

[7]Defendants have also failed to identify how they would be prejudiced if Plaintiffs were to prevail on either of these theories in Dolezsar's absence.

[8]We also note that this litigation is still in its early stages and that the facts will likely become more fully developed over the course of discovery.  If those facts reveal a substantially larger role for Dolezsar than is currently alleged in the Second Amended Complaint, then it may become appropriate for the district court to revisit this issue.  However, we cannot say that Dolezsar is a necessary and indispensable party to Plaintiffs' fraud claims as they are currently pleaded.

¶36    In *United Park City Mines Co. v. Greater Park City Co.*, 870 P.2d 880 (Utah 1993), the plaintiff had brought claims for aiding and abetting breach of fiduciary duty. *See id.* at 890. The supreme court affirmed the district court's conclusion that the plaintiff's claims were barred by the applicable statute of limitations. *See id.* By applying the statute of limitations to the plaintiff's claims, without reservation or language suggesting a remaining question as to the claims' viability, the supreme court implicitly acknowledged that such claims exist under Utah law.

¶37    This court provided even more direct recognition in *Russell/Packard Development, Inc. v. Carson*, 2003 UT App 316, 78 P.3d 616, *aff'd on other grounds*, 2005 UT 14, 108 P.3d 741. In *Russell/Packard*, we stated that "'[p]arties who knowingly join a fiduciary in fraudulent acts, whereby the fiduciary breaches his or her fiduciary duties, are jointly and severally liable with that fiduciary.'" *Id.* ¶ 33 (quoting 37 Am. Jur. 2d *Fraud and Deceit* § 306 (2001)). In a parenthetical supporting this statement, we observed that "'[t]he gravamen of the claim [of aiding and abetting a breach of fiduciary duty] is the defendant's knowing participation in the fiduciary's breach.'" *Id.* (quoting *Future Group, II v. Nationsbank*, 478 S.E.2d 45, 49 (S.C. 1996)).

¶38    In light of *United Park City Mines Co.* and *Russell/Packard*, we agree with Plaintiffs that Utah law recognizes a cause of action for aiding and abetting the breach of a fiduciary duty.[9] The district court's conclusion to the contrary was error, and we reverse the dismissal of Plaintiffs' claims.

¶39    Plaintiffs also purport to challenge the district court's determination that Utah does not recognize a cause of action for aiding and abetting fraudulent nondisclosure. However, the argument contained in Plaintiffs' brief only addresses aiding and abetting a breach of fiduciary duty. Because Plaintiffs' brief fails to present an argument that Utah recognizes a cause of action for aiding and abetting fraudulent nondisclosure, we

---

[9]We also note that multiple Utah cases have relied on section 874 of the Restatement (Second) of Torts, governing violations of fiduciary duty. *See Neff v. Neff*, 2011 UT 6, ¶ 87 n.70, 247 P.3d 380; *Stevensen 3rd E., LC v. Watts*, 2009 UT App 137, ¶ 33, 210 P.3d 977; *d'Elia v. Rice Dev., Inc.*, 2006 UT App 416, ¶ 36, 147 P.3d 515. The comments to section 874 state that "[a] person who knowingly assists a fiduciary in committing a breach of trust is himself guilty of tortious conduct and is subject to liability for the harm thereby caused." Restatement (Second) of Torts § 874 cmt. c (1979).

do not disturb the district court's ruling on that issue. *See* Utah R. App. P. 24(a)(9) (requiring an appellant's argument section to "contain the contentions and reasons of the appellant with respect to the issues presented"). We recognize that Plaintiffs' reply brief does present a more developed argument regarding Utah's recognition of this cause of action, but we do not consider arguments raised for the first time in an appellant's reply brief. *See Brown v. Glover*, 2000 UT 89, ¶ 23, 16 P.3d 540 ("Generally, issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court."). In declining to address this issue due to Plaintiffs' inadequate briefing, we express no opinion on the underlying question of whether Utah recognizes a cause of action for aiding and abetting fraudulent nondisclosure.

CONCLUSION

¶40    We conclude that the district court erred when it dismissed Plaintiffs' fraud and fraud-based claims for failure to plead them with particularity. Although Plaintiffs' claims are numerous, lengthy, and complex, neither the length of the Second Amended Complaint nor Plaintiffs' use of internal cross-referencing justifies the conclusion that Plaintiffs have failed to plead with the required particularity. On remand, the district court may require the parties to assist it with a claim-by-claim analysis of Plaintiff's fraud and fraud-based claims for adequate particularity. The district court may also take reasonable steps, within its discretion, to ensure that the litigation of this matter remains manageable and efficient.

¶41    We also determine that the district court erred when it concluded that Mower's deceased husband was an indispensable party to this litigation, and that the district court erred in dismissing Plaintiffs' claims for aiding and abetting the breach of a fiduciary duty. For all of these reasons, we reverse the district court's June 2010 rulings on these grounds and remand this matter to the district court for further proceedings.

_____
William A. Thorne Jr., Judge

-----

¶42    WE CONCUR:

20100532-CA                                    20

_____
Gregory K. Orme, Judge


_____
Stephen L. Roth, Judge